

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**FILED**

APR 1 2 2024

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

RARE BREED TRIGGERS, LLC, and )
ABC IP, LLC, )
　 )
Plaintiffs, )
　 )
　 )          Case No. 22-cv-107-GKF-JF
v. )
　 )
　 )
THOMAS ALLEN GRAVES, )
POWERED BY GRAVES, INC., )
VALOR MANUFACTURING LLC, )
VALOR ARMS LLC, )
JANEWAY MACHINE, INC., )
JANEWAY LEASING, LLC, )
JANEWAY MANUFACTURING INC., )
JANEWAY MACHINE COMPANY, INC., )
7050 CORP., )
　 )
Defendants. )

## JUDICIAL NOTICE & DECLARATION,

**Thomas Allen Graves CANNOT BE COMBINED IN PROXIOMETRIC**

**RELATION TO PLAINTIFFS' ILLEGAL MACHINE GUN BUSINESS &**

**FURTHERMORE SERVES NOTICE TO THE COURT OF SUBSTANTIAL**

**CASE ELEMENTS FOR CLARIFICATION OF SUMMATED RECORD.**

## A Notice In Defense

**1.**

I am Thomas Allen Graves of Eagleshead Island, Oklahoma, and I have been

summoned by this Court to act as a defendant in this civil case, this same

case wherein  my own pioneered intellectual properties have been stolen,

and modified to produce illegal, and / or unlawful machine gun products

by plaintiffs in conspiracy with defendants, and others, all of whom have

contributed to subverting me in multiple aspects of responding to, and/or

justifiably prevailing in this case, thus I am being forced to fight pro se,

and as a victim of plaintiffs' lawfare, and so it is that I compel this Court to

take special, and exceptional notice in order to accomplish justice.

## Brief Overview

**2.**

The plaintiffs' meritless complaint would not have anything at

all to do with accomplishing justice, except that the plaintiffs are

herein exposed acting in fraud and grand larceny.

.

/

-This court has been led by the plaintiffs, that are manufacturers to prosecute me, a non-manufacturer, and also a non-principal inventor / licensor as a defendant in this patent infringement lawsuit beginning in 2022

(See Exhibit A)

wherein plaintiffs by using my pioneered technology eventually discovered to be originally stolen from me beginning as early as 2013 and eventually resulting in plaintiffs' acquired 2019 patent claim

(See Exhibit B), [This particular theft also includes multiple engines and other research machinery, experimental machinery, specifications, plans, tooling, and etcetera.]

used herein for alleging a physically impossible case of patent infringement

(See Exhibit C)
(See Exhibits 1,2,3,4,5,6,7,8,9,12a,13)

that has already been settled between this case's same parties with the exception of myself, in a case initiated concurrent to and settled prior to this present case, and that this prior case was somehow concluded without any serious consideration of physical merit in the prior case, that these same

2

plaintiffs have brought against at least one of the same defendants, Anthony McKnight or his alter ego herein,

(See case [N.D.Fla.] 1:22-cv-00061)

including that those defendants in the prior case, and the factual same defendant in this case have contractually indemnified me specifically against the present plaintiffs, and are currently present as defendant, although the indemnification does not require that the indemnifier be a defendant in the capacity of my indemnification from any plaintiffs, and also that same defendant that did breech this contractual indemnification relative to this present case is himself his alter ego, and a defendant in this present case,

(See Exhibit F)
(See Exhibit 5,9,10,11,15)

and while every party in this case with the exception of myself, and parties of no less than 9 related cases

(See Exhibit H)

3

are generally in the business of infringing my core technology patent US

9816772 claim 1, with a priority of invention dated September 11, 2014,

(See Exhibit I)

and including that all other parties are otherwise converting my assets by

any means including this case itself, and wherein to be specific the plaintiffs,

Rare Breed Triggers LLC's, and ABC IP LLC's sole purpose for going into

business, and sole business, that began prior to December of 2020, and

continues to this day,  is the unlawful conversion of my perfectly digital

semi-automatic technology assets via their illegal manufacture, and

distribution of machine guns[!],

(See Case [N.D.Ok] 22-cv-00107 Document 83)
(See Exhibit J)
(See Exhibit 14)

and that plaintiffs' illegal manufacture, and distribution of machine guns

includes contributory theft, and inducement of theft by others including

unauthorized use of, unlawful export of, and unlawful import of my core

technology patent related systems,

4

(See Exhibit K)

and furthermore these same plaintiffs in combination with their other unethical, illegal, and unlawful actions have continued to falsely allege that I have damaged their illegal machine gun business by unlawfully infringing on their 10514223 patent claim 4 that itself has only been thus far used in the embodiments of illegal machine guns as determined in [E.D.N.Y.] 23-cv-369, and herein becomes a criminal allegation and not a civil matter, thus this Court does not have jurisdiction as required to award damages to the plaintiffs for their unlawful activity and/or products as the plaintiffs, plaintiffs' counsels, and the Court itself had known or should have known, but regardless of facts that I have repeatedly exposed in this case have proceeded collectively with actions against me that are not within the scope of any justifiable authority, and therefore this Court's Jurisdiction is fundamentally challenged for this lawsuit, and I continue to totally deny the plaintiffs' core allegations including patent infringement, and manufacture, sales, promotion, or any voluntary involvement whatsoever in the plaintiffs' illegal, and unlawful 10514223 patent based machine gun business,

(See case [N.D.Ok.] 22-cv-00107 Doc. No. 83, Doc.85)

and that plaintiffs, plaintiffs' counsels by fraudulent use of USPTO recordation system  in combination with the Courts insufficient reactions or

5

malicious actions are responsible for theft of up to 10 items of intellectual properties that I created and registered at the USPTO, and that these intellectual properties include both defense and industrial methods, and apparatus potentially far exceeding valuation of all of the plaintiffs' assets, the plaintiffs counsel's assets combined, and indicating that this 10514223 patent infringement case charade is part of an industrial scale espionage program also intended fraudulently obtain next generation rocketry, turbomachinery, and other advanced thermodynamic process machinery in addition to plaintiffs' previous thefts.

(See Exhibit G)

Conclusion

**3.**

These fictitious entities of plaintiffs including their owners and managers have by submission validated the jurisdiction of this Court over them pertinent to certain counterclaims resulting from their fraudulent lawsuit herein and furthermore this Court's actions combined with plaintiffs and plaintiffs counsels' actions have caused further injury to me.

6

**(+/-)**

I reserve all rights to amend this notice and counterclaims including

elaborations of the same and extensive enlargements of scope.


Currently I do not have anything further to say,

*Thomas Allen Graves* - *Victim*

Thomas Allen Graves *of Eagleshead Island*

4/12/24

295 Eagle Point Lane
Sand Springs, Oklahoma
74063

(512) 363-8440

7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RARE BREED TRIGGERS, LLC, and<br>ABC IP, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | Case No. 22-cv-107-GKF-JF |
| v. | ) | |
| | ) | |
| | ) | |
| THOMAS ALLEN GRAVES, | ) | |
| POWERED BY GRAVES, INC., | ) | |
| VALOR MANUFACTURING LLC, | ) | |
| VALOR ARMS LLC, | ) | |
| JANEWAY MACHINE, INC., | ) | |
| JANEWAY LEASING, LLC, | ) | |
| JANEWAY MANUFACTURING INC., | ) | |
| JANEWAY MACHINE COMPANY, INC., | ) | |
| 7050 CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBITS: 1-15**

Image Source - opplanet-powered-by-graves-alamo-15-positive-displacement-ar-trigger-black-697273165750-av-1

# Exhibit 1



**"To wheel or not to wheel ?, that is the question..."**

In case 4:22-CV-001707 plaintiffs claim infringement of their US 10514223 or 223 patent claim 4.

The four corners of this case ultimately become governed by the laws of physics because the Alamo 15 trigger's roller or rotating wheel negates any possibility of having a locking bar contact with a bolt carrier group. The "locking bar to bolt carrier group contact" is required to accomplish any of the 223 patent claims and this "contact" is physically impossible to accomplish with an Alamo 15 trigger.

# This case is a dead bang loser for plaintiffs.

Image Source - opplanet-powered-by-graves-alamo-15-positive-displacement-ar-trigger-black-697273165750-av-1

# Exhibit 2



**"To wheel or not to wheel ?, that is the question..."**

In case 4:22-CV-001707 plaintiffs claim infringement of their US 10514223 or 223 patent claim 4.

The four corners of this case ultimately become governed by the laws of physics because the Alamo 15 trigger's roller or rotating wheel negates any possibility of having a locking bar contact with a bolt carrier group. The "locking bar to bolt carrier group contact" is required to accomplish any of the 223 patent claims and this "contact" is physically impossible to accomplish with an Alamo 15 trigger.

## This case is a dead bang loser for plaintiffs.

Image Source - opplanet-powered-by-graves-alamo-15-positive-displacement-ar-trigger-black-697273165750-av-1

# Exhibit 3



**"To wheel or not to wheel ?, that is the question..."**

In case 4:22-CV-001707 plaintiffs claim infringement of their US 10514223 or 223 patent claim 4.

The four corners of this case ultimately become governed by the laws of physics because the Alamo 15 trigger's roller or rotating wheel negates any possibility of having a locking bar contact with a bolt carrier group. The "locking bar to bolt carrier group contact" is required to accomplish any of the 223 patent claims and this "contact" is physically impossible to accomplish with an Alamo 15 trigger.

## This case is a dead bang loser for plaintiffs.

Image Source - opplanet-powered-by-graves-alamo-15-positive-displacement-ar-trigger-black-697273165750-av-1

# Exhibit 4



**"To wheel or not to wheel ?, that is the question..."**

In case 4:22-CV-001707 plaintiffs claim infringement of their US 10514223 or 223 patent claim 4.

The four corners of this case ultimately become governed by the laws of physics because the Alamo 15 trigger's roller or rotating wheel negates any possibility of having a locking bar contact with a bolt carrier group. The "locking bar to bolt carrier group contact" is required to accomplish any of the 223 patent claims and this "contact" is physically impossible to accomplish with an Alamo 15 trigger.

# This case is a dead bang loser for plaintiffs.





# POWERED BY GRAVES

## PBG

### ALAMO-15 — WORLD'S FASTEST SEMI-AUTOMATIC TRIGGER

- PATENT PENDING GRAVES ROLLER TECHNOLOGY IMPROVES RELIABILITY, DECREASES WEAR
- HAMMER IS HARDENED 17-4 STAINLESS STEEL
- HEAVY DUTY HAMMER PIN LUG
- HARDENED 17-4 STAINLESS STEEL TRIGGER
- LIGHTWEIGHT 750 ALLOY

ALAMO-15

## Exhibit 5

THE ALAMO-15 IS THE CULMINATION OF MORE THAN 40 YEARS OF RESEARCH AND DEVELOPMENT FROM THOMAS ALLEN GRAVES, THE ORIGINAL INVENTOR OF THE POSITIVE DISPLACEMENT TRIGGER. DESIGNED FOR THE AR PLATFORM CHAMBERED IN .223/5.56, THE ALAMO-15 FEATURES THE PATENTED GRAVES ROLLER TECHNOLOGY WHICH IMPROVES RELIABILITY, ELIMINATES WEAR AND TEAR, AND PROVIDES AN UNBEATABLE SHOOTING EXPERIENCE.

### MADE IN THE U.S.A.



### BUILT BY AMERICANS FOR AMERICANS







Exhibit  8



Introducing **the Powered By Graves ALAMO-15 trigger!**
**With more than 40 years of research and development,**
**this is the latest offering by Thomas Allen Graves, the**
original designer and patent-holder of the positive
displacement reset trigger. Made specifically for the AR
platform chambered in .223/5.56, the ALAMO-15 is for
anyone seeking a high-performance trigger for their
firearm. Designed with durability and reliability in mind,
the ALAMO-15 stands out as the market leader in the
assisted-reset trigger's category.

**MINIMUM REQUIREMENTS:**
M16 BOLT CARRIER GROUP (BCG)
H-2 OR HEAVIER BUFFER
MIL-SPEC LOWER

EXAMPLE OF MIL-SPEC RECEIVER TRIGGER POCKET CUT

6  97273  16575  0

Exhibit  9

Exhibit  10



# Family Crest
# Exhibit 11



Powered by Graves, Inc., alter ego of it's founder Anthony McKnight, in sync, with Janeway, et., al., Valor et., al., 7050 Corp a.k.a. MDN, Inc., infringed counterfeited and used the Grave's "Family Crest" to brand the Alamo-15 "all" meant to knowingly willfully and intentionally false inculpate a non-manufacturer "wrong party."  The parties unauthorized use violates 18 USC 2320 felony "counterfeit branding" and 17 USC 106 & 107 "unauthorized use of © for personal gain."

Image Source – Graves Technologies, Eagleshead Island Oklahoma



Exhibit 12a

**"To wheel or not to wheel ?, that is the question…"**

In case 4:22-CV-00021 the infringer decided not to wheel and removed the wheel from Alamo 15 triggers to make Para 15 triggers, brilliant! Plaintiffs RBT, LLC's & ABC IP, LLC's patent claim prevails, PARA 15 triggers infringe US Patent 10,514,223 or 223 Claim 4 by using all patent claim's elements including locking bar to gun bolt carrier contact.

Further, all triggers using plaintiffs' 223 patent have been declared machine guns by EDNY court as of 09/05/23 [Doc 139] in 39-cv-369.

# This case is a dead bang winner for plaintiffs.

Image Source – Graves Technologies, Eagleshead Island Oklahoma



Exhibit 13

**"To wheel or not to wheel ?, that is the question…"**

In case 4:22-CV-00021 the infringer decided not to wheel and removed the wheel from Alamo 15 triggers to make Para 15 triggers, brilliant! Plaintiffs RBT, LLC's & ABC IP, LLC's patent claim prevails, PARA 15 triggers infringe US Patent 10,514,223 or 223 Claim 4 by using all patent claim's elements including locking bar to gun bolt carrier contact.

Further, all triggers using plaintiffs' 223 patent have been declared machine guns by EDNY court as of 09/05/23 [Doc 139] in 39-cv-369.

# This case is a dead bang winner for plaintiffs.



# Exhibit 14



**RARE BREED TRIGGERS - GRAND LARCENY**

NOV 02, 2023, 10:16 AM



Who is this?

You can now message and call each other and see info like Active Status and when you've read messages.



Oh Graves.  You have my money?   You owe us 3.9 million.



NOV 02, 2023, 11:59 PM



AMMO

ATRIUS

**Atrius Triggers Select Fire Assisted Reset Trigger For AR15 Platform**

**FIRST ORDERS HAVE SHIPPED!**

~~$529.99~~

**$499.99**

or 4 interest-free payments of $125.00 with Sezzle

Exhibit  15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

RARE BREED TRIGGERS, LLC, and )
ABC IP, LLC, )
)
Plaintiffs, )
)
) Case No. 22-cv-107-GKF-JF
v. )
)
)
THOMAS ALLEN GRAVES, )
POWERED BY GRAVES, INC., )
VALOR MANUFACTURING LLC, )
VALOR ARMS LLC, )
JANEWAY MACHINE, INC., )
JANEWAY LEASING, LLC, )
JANEWAY MANUFACTURING INC., )
JANEWAY MACHINE COMPANY, INC., )
7050 CORP., )
)
Defendants. )

**EXHIBITS: A-K** *

*E = Not inc.

**(Exhibit A – A Historical Perspective)**

**Is a non-principal inventor / licensor likely to be named as a defendant in a patent infringement lawsuit between competing manufacturing companies?**

To address this question, we can analyze one of the most intense rivalries in American corporate history, the "war of the currents",

Edison Electric Light Company v. Westinghouse Et Al.

(Circuit Court, D. New Jersey. October 1, 1889)

Westinghouse acquired a license to manufacture and distribute alternating current machinery in July of 1888. This technology had been pioneered by Nikola Tesla and pirated universally. Non-principal inventor and licensor, Nikola Tesla widely promoted the Westinghouse controlled alternating current system, including "Tesla" branded alternating current motors, and blatantly asserted his invention, and contribution to this alternating current based technology. Some Westinghouse alternating current motors and many

other products have been branded as "Tesla" without contractual authorization by Nikola Tesla.

Although the primary contention of Edison Electric Light Company's complaint was centered around Nikola Tesla's core technology patent claim and the resulting effect upon all commercial alternating current technology, **Nikola Tesla was not made a defendant in Edison Electric Light Company**

**v. Westinghouse Et Al, wherein all parties except Nikola Tesla are manufacturers using his core technology patent claim.**

**Again, Nikola Tesla was not made a defendant.**

**Like Tesla in the lawsuit above I am a non-principal inventor / licensor
,
but unlike the lawsuit above in this case I am made a defendant while all
other parties except myself are manufacturers that are all pirating the
method that I uncontestably pioneered and attempted to license!
I have not and do not own or manage a trigger manufacturing
operation. I
cannot be expected to control manufacturing and intellectual property
concerns for an entity that I am not part of.**

**Anthony McKnight is responsible for manufacturing and intellectual
property concerns related to the Alamo 15 trigger product in this
present
case. Anthony McKnight as founder and controller of Powered By
Graves
Inc., is a defendant in this present case, and this fact is known to the
plaintiffs, and the plaintiff's counsel.**

**I do not understand how I am to be made to act as a defendant in any
significant part of this case or in any continuation of this case as I am
the
wrong party to bring before this Court or any Court for this subject
matter and therefore, I will proceed herein as Complainant.**

———————————————————————

Thomas Allen Graves

3/21/2024

<u>Exhibit B</u>

(copy)

## Official documents implicate RARE BREED TRIGGERS in grand larceny scheme

**(Austin, Texas - 11/01/2023)** There are multiple lawsuits wherein Rare Breed Triggers has sued competitors over alleged patent infringement issues. One of these cases, a case in the 453rd USDC at Hays County, Texas was presided over by Judge Terri J. Shibbe. Post default judgement proceedings in this case have exposed Rare Breed Triggers in a grand larceny scheme.

Post "default" judgment documents filed pro se in the 453rd USDC by the pioneering inventor of Flex Fire, a.k.a. FRT type trigger technology, and core US patent owner Thomas Allen Graves strongly refutes the fundamental validity of Rare Breed Triggers' alleged rights to produce the Flex Fire – FRT 15 type trigger, and Rare Breed Triggers' rights to sue others over their alleged patent rights claims.

Graves is a Texas Star artist, inventor, engineer, and a well-known firearm designer. Working in Buda, Texas during 2013-2015 Graves produced the G1 Combat carbine. G1 Combat carbine is the first integrated Flex Fire technology type firearm. This is a new species of firearm that uses multiple patented mechanisms and processes of an automatic power reset trigger (Flex Fire Technology), and a 2 stroke, 3 cycle gas damping recoil system (Captive Pulse Damper) among other new technologies. Graves began filing Flex Fire Technology related patents on 9/11/2014.

In 2021 Rare Breed Triggers accused Graves of infringement of a 2019 patent claim that Rare Breed Triggers' acquired from Steven Cooper Rounds and Jeffery Cooper Rounds. Steven Cooper Rounds and Jeffery Cooper Rounds combined were party to a previous agreement with Graves. The Rounds made this agreement with Graves for the Rounds to fund Flex Fire Technology patent applications and examinations for Graves' technology in exchange for the Rounds' use of exclusive license for AR type firearm applications resultant from those related patents. This agreement was initiated by a term sheet agreement and ultimately a signed licensing agreement in 2018. The general terms of this agreement were to pay Graves 50% after manufacturing cost.

Published government documents, and court documents from as recent as October 2023 are convincing evidence that Graves did not infringe Rare Breed Triggers' acquired patent claim. Rare Breed Trigger's acquired patent claim is contested by Graves and there are multiple indications that Rare Breed Triggers' acquired patent claim subject was actually invented by Graves but secretly patented by Jeff Cooper Rounds while the Rounds were working with Graves. It was learned that Rounds' patent attorney that had worked with Graves and could not file what became the Jeffery Cooper Rounds patent unless it was to be filed for Graves. Independent from the contestable nature of Rare Breed Triggers' acquired patent, evidence shows that Graves did not use or infringe the Rare Breed Triggers' acquired patent claim.

.

Rare Breed Triggers' acquired patent infringement claim against Graves was initiated by naming Graves in a suit against  Big Daddy Unlimited. Documents reveal that in fact "all" Flex Fire – FRT type triggers are dependent to, subservient to, and derivative of the Graves core US patent technology Flex Fire Technology portfolio claim or claims that were priority at USPTO as early as 2014.

Rare Breed Triggers, although with their lack of standing to bring suit on anyone whosoever, pose to have won multiple cases against Graves. As it stands all cases concerning Graves' technology or naming Graves averted any trial of merits. As it turns out Rare Breed Triggers lacked standing and could not prevail on merit.

Default judgements wherein Rare Breed Triggers sued Big Daddy Unlimited, Big Daddy Unlimited having fully indemnified Graves, and then never appearing in court to answer Rare Breed Triggers' subsequent, and multiple perjurious complaints that were filed naming Graves in addition to Big Daddy Unlimited, and a Big Daddy Unlimited shell company in one case, and Graves in the other.

Prima facie evidence indicates that the specific default judgements naming Graves amount to over $4M. This resulted in one case whereby a Judge erroneously ordered Graves to produce financial information to Rare Breed Triggers based upon their default judgments against Big Daddy Unlimited wherein Rare Breed Triggers maliciously named Graves. In another instance it resulted that Rare Breed Triggers' demand for Graves to pay for compulsory action legal fees was denied by a Judge.

So, the court documents indicate that Big Daddy Unlimited explicitly indemnified Graves within a contract, and that default was taken only by Rare Breed Triggers because Big Daddy Unlimited breached the Graves contract indemnification clause, failing to take any legal action. Big Daddy Unlimited never showed up for court.

It can be deduced that Rare Breed Triggers effectively conspired with Big Daddy Unlimited ensuring "no show" default judgements in multiple USDC cases naming Graves. Even if Rare Breed Triggers allegations could have been justified these default judgments are not actually "wins" against Graves as Rare Breed Triggers misrepresents. Graves was fully indemnified by Big Daddy Unlimited beginning in October 2021. This indemnification clause specifically indemnifies Graves from Rare Breed Triggers actions.

Extensive court document analysis combined with patent document analysis further confirm that Rare Breed Triggers' commercialization of Flex Fire – FRT15 type trigger design and other trigger designs had in fact plainly infringed a core patent claim owned by Graves, and that all Flex Fire –FRT type triggers that were produced under these known conditions by anyone's permission excepting Graves, were in fact without permission, and compensation. Because Rare Breed triggers and others are counterfeiters the do not have any rights by law, in law, or at law related to this case.

Other information found in these documents further indicates that Rare Breed Triggers falsely represented themselves in multiple frauds upon the federal court as the owners or the licensed party of a "Graves – Rounds patent licensing agreement" that has remained until now, after approximately 5 years unconsummated, was void, a nullity, as if it never happened. Rare Breed Triggers could not resolve this in equity, as what is void does not exist, thus cannot be resolved.

Conclusively, by evident conspiracy, and grand larceny Rare Breed Triggers, and others have continuously, and willfully infringed the Graves' patent claim, as evidenced in known source documents. All indications are that Rare Breed Triggers is the epicenter of a collective felony level conversion of Graves' assets for money. Rare Breed Triggers' President admits to $100M and owes under law $500M.

- **Evidence indicates that Rare Breed Triggers and others did not have the requisite standing to sue Graves or to commercialize Flex Fire - FRT 15 type triggers or trigger technology.**

- **Evidence indicates that Rare Breed Triggers and others have continuously or willfully engaged in direct infringement of Graves' core patent claim by commercializing Flex Fire - FRT 15 type triggers or trigger technology.**

- **Evidence indicates that Rare Breed Triggers and others' long-term conspiracy to commit grand larceny including their commercialization of Graves' assets, has resulted in subversion, and to damage Graves of more than $100M.**

Sources:
- United States v. Rare Breed Triggers, LLC, 1:23-cv-00369
- Rare Breed Triggers, LLC v. Garland, 6:21-cv-1245
- Rare Breed Triggers, LLC  v. Big Daddy Enterprises, Inc.,  1:21cv149
- Rare Breed Triggers, LLC v. Big Daddy Unlimited, Inc., 1:2022cv00061
- Rare Breed Triggers, LLC v. Strbac, 1:2022cv00280
- ABC IP, LLC v. Thomas Allen Graves, cv22-0261
- Rare Breed Triggers, LLC v. Graves, 4:22-cv-00107
- Rare Breed Triggers, LLC v. Crawford, 4:2023cv00021
- National Association for Gun Rights, Inc., v. Garland et al, 4:2023cv00830

(Exhibit C – US 10514223 patent claim 4 v. Alamo 15 infringement analysis)

### 223 patent claim 4 v. Alamo 15 trigger product

### **Infringement Analysis**

Anthony McKnight's Powered By Graves branded Alamo 15 trigger product is an Automatic Reset Trigger or ART mechanism as defined within the Star

Fire Technology licensing agreement and corresponding technical writings.

The Alamo 15 trigger like any Star Fire Technology based trigger was specifically devised to have at least a single differentiating element beyond the scope of plaintiffs' 223 patent and all claims thereof. This single differentiating element was not coincidental but instead it is intended as a strategic advantage of Star Fire Technology embodiments.

If any element of a claim cannot be read against an accused product then the

product is beyond the scope of the patents' claims and therefore cannot be an infringing product.


The Alamo 15 trigger product may lawfully include any 223 patent claim element except one without infringing the 223 patent in any way. Any failure of the accused product to strictly adhere to the patent claim indicates non-infringement.


All elements of the 223 patent claim cannot be read against the Alamo 15 trigger product.

The Alamo 15 trigger product does not include the elements of locking bar to gun bolt carrier contact as claimed in all independent claims of the 223 patent.

Alamo 15 trigger product uses a roller or rotating wheel between the surfaces of a locking bar and a gun bolt carrier rendering it impossible to have contact between a locking bar and a gun bolt carrier as claimed in any of the 223  patent's claims.

An example of a 223 patent embodiment of FRT 15 trigger product's locking
bar to gun bolt carrier contact is depicted in the following graphic from case 1:21-CV-00149, document 1 is shown for reference below,



An example of Alamo 15  trigger product's  roller or rotating wheel to gun bolt carrier contact is depicted in the following graphic from plaintiffs' complaint of case 1:22-CV- 00061, document 1 is shown for reference below,



<u>Plaintiffs allege patent infringement of their 2019, US 10514223 or 223 patent claim 4 by Alamo 15 trigger product</u>

The following is a true and correct copy of the same claim,

4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising:

a housing having transversely aligned pairs of openings for receiving

hammer and trigger assembly pins;

a hammer having a sear notch and mounted in the housing to pivot on a

transverse axis between set and released positions;

a trigger member having a sear and mounted in the housing to pivot on a

transverse axis between set and released positions, the trigger member

having a surface positioned to be contacted by the hammer when the

hammer is displaced by the bolt carrier when cycled, the contact causing the

trigger member to be forced to the set position;

a locking bar pivotally mounted in the housing and spring biased toward a

first position in which the locking bar mechanically blocks the trigger

member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching

a substantially in-battery position in which the trigger member can be moved

by an external force to the released position.

## Claim Chart

| Patent Claim | Alamo 15 trigger product |
|---|---|
| | |
| (1) 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, | **Alamo 15 trigger product is** for a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, |
| (2) a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | **Alamo 15 trigger product may include** a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; |
| (3) a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions; | **Alamo 15 trigger product may include** a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions; |
| (4) a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, the contact causing the trigger member to be forced to the set position; | **Alamo 15 trigger product may include** a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, the contact causing the trigger member to be forced to the set position; |
| (5) a locking bar pivotally mounted in the housing and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger member can be moved by an external force to the released position. | **Alamo 15 trigger product does not include** a locking bar pivotally mounted in the housing and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger member can be moved by an external force to the released position. |

FILED
2/7/2023 4:05 PM
Avrey Anderson
District Clerk
Hays County, Texas

*Exhibit D*

## CAUSE No. 22-0261

| | |
|---|---|
| ABC IP, LLC | IN THE DISTRICT COURT OF |
| Plaintiff, | |
| v. | HAYS COUNTY, TEXAS |
| THOMAS ALLEN GRAVES | 453rd JUDICIAL DISTRICT |
| Defendant. | |

## POST JUDGEMENT REQUEST TO SET-ASIDE

### Dated: 2/7/23

### 17 Pages

**Content**:

S1. APOLOGIES & REPRISE

S2. BRIEF BACKGROUND

S3. TECHNOLOGY TIMELINE OVERVIEW

S4. COUNTERCLAIMS & MERITORIOUS DEFENSES

S5. REQUEST FOR REMEDIES OR JUSTICE

S6. SWORN PERSON & DECLARATION

S7. CONTACTS & AFFIRMATION

1

## Section 1. APOLOGIES & REPRISE

The Defendant of case 22-0261 will request to **set-aside or to vacate case 22-0261** in view of the following;

The **Defendant apologizes to the court and to the Plaintiff's council** and asserts that he was originally under the assumption that he was being represented, and/or defended, and otherwise indemnified by at least a third party, and therefore did not respond to the court citation in a timely manner. He was eventually aware of a **failure to indemnify** him in any manner at all by the third party.

The Defendant wanted to respond at an earlier time but he was without knowledge of court purposes and process, and could not afford competent council because of hardships related to his living being highly dependent on **past due royalties and/or other past due payments** concerning the multiple firearm related products that are subject case 22-0261. Next he began to study the case and the background so that he could make an accurate and justifiable contribution to resolving the problems associated with case 22-0261 including his own defense in these matters. The Defendant believes that he has a basic grasp of the matters at this point and is now capable of properly communicating with Judge Tibbe, the court or others pertaining to this case and has therefore filed this document **Pro Se**.

The Defendant would prefer to proceed with well-practiced council however with this being currently impossible and considering the severity of the situation the **Defendant is responding** regardless. Please be aware **that this case includes** the subjects and/or issues of **past due royalties or other debts owed** to the Defendant **by the Plaintiff and/or others** that **may exceed $3M**.

Please bear with me as I do my best to **study and resolve** these matters.

2

## Section 2. BRIEF BACKGROUND

The Defendant has an extensive history and portfolio of writings, art, devices, methods, machines, and experiments dating back to the early 1970's. The Defendant is considered a pioneer in the field of internal and external combustion engines and experimental physics related to thermodynamics, and inertial systems.

**Ohio's Gravitational Energy Corporation had built the world's largest gravity assisted reciprocating engine** as part of an experiment to develop gravity assisted engines that had begun in the early 2000's. As early as 2010 the partners in the company began to consult with other engine companies **seeking to better understand their experimental results** and to determine and/or **acquire better gravity assisted engine designs.** Although the engine companies were helpful in some respects their **engineers were not well adapted to understanding, explaining or designing machines of this nature**. Eventually Tulsa's **Arrow Engine Company's chief engineer Everett Treat advised** Gravitational Energy Corporation partners that **the Defendant was highly skilled in the art of experimental** engines and put them in **contact with the Defendant**.

By July of 2011 Partners of Gravitational Energy Corporation arrived at the Defendant's lab in Buda, Texas. **Within a few days** preliminary terms were established and two of the **partners immediately moved** their residence and operations to Buda, Texas. These **two partners** were **Steven Cooper Rounds** and **Jeff Cooper Rounds.** With their funding and the Defendant's engineering prowess the **technology development was rapid** but somewhat **disrupted** by the Rounds running a **continuous and seemingly prolonged study to understand** the results of testing wherein it was **already understood** by the defendant. Because the Rounds were the financiers the defendant was **compelled to modify** multiple engine designs over **several years** to meet the requirements of funding. **In this manner** most of the engine designs were **compromised** mechanically or developmentally. The Defendant understood the relationship to be that the **Rounds provided funding** and assistance, and the **Defendant provided technology** that **when combined could be converted to industry, and/or commercial purposes** and tried to make the best of the situation.

3

The Defendant eventually **became impatient** with the unadvised **expenditure of energy** and wanted to produce complete **viable engines and other machines** without the general comprehensive, and technological limitations, therefore during 2014 the Defendant **offered** to let the Rounds partner in some of his firearm technology so that they could **all** have a more certain and more controllable pathway to **making some money**. The Defendant expected that the firearm technology project was simple compared to his usual projects and that there would be **less disruption** by the Rounds. The Defendant wanted to build a **Rocket Technology Center** and other new labs, and to develop machines **without ideological limitations**, and without third party **funding dependency** so he proceeded to **provide** the **Flex Fire Technology** systems in order to more rapidly accomplish **those objectives**.

**On 1/31/2018** the Rounds and the Defendant signed a **Flex Fire Technology inclusive agreement** before a registered notary public in Buda, Texas wherein the **Rounds would use** some Flex Fire Technology exclusively within the **Stoner based AR (Armalite Rifle) type** firearms. This agreement **generally included** that the defendant received **50 percent after production/manufacturing cost** among other provisions both firearm and engine related. **Except for AR type firearm applications** the defendant retained **exclusivity of all other rights** that are **associated with Flex Fire Technology**.

**As early as mid-2020** the Plaintiff and/or **Rare Breed Triggers released the FRT 15 trigger** system for AR type firearms. This was the **first** commercial use of a **Flex Fire Technology** based trigger.

The **Plaintiff and/or others produce the FRT 15** that trigger is used as or in combination as a **semi-automatic firearm** having a reciprocating gun bolt that includes **a trigger being mechanically (automatically) reset** during the earliest **50%** of the firearm's **operating cycle** and then also includes that **the trigger is mechanically (automatically) prevented from being pulled** until the bolt is substantially in battery or otherwise **ready to fire**.

In the **Defendant's technical literature** this system is referred to as **Flex Fire Technology** (FFT), **Positive Displacement Trigger** (PDT) **technology**, and **Automatic Reset Technology** (ART).

4

Simply stated Flex Fire Technology is a method, system or mechanism comprised of,

1; a barrel/chamber/frame comprising a firearm that includes
2; a reciprocating gun bolt (this moves towards and away from the chamber)
3; and a trigger (this automatically resets during the first ½ of reciprocation and automatically blocks pulling of the trigger until the gun bolt is in firing position).

Or as in claim 1 of US patent 9816772 by the Defendant Thomas Allen Graves,

1. A handheld finger activated semi-automatic arm comprising:
a frame;
a chamber face that is supported to the frame and that comprises a barrel;
a trigger that is depressible to fire the arm once per operating cycle;
a gun bolt that is movable with respect to the frame rearward away from the chamber concurrent with the trigger being positively mechanically reset; and,
wherein the trigger is blocked from depression until up to 99% of the operating cycle.*

(*Note: 1 or more percent of the operating cycle duration may be used pulling the trigger and other events that happen before the gun bolt is moving.)

The Plaintiff's and/or other's patent claim or claims and the **FRT 15 trigger** products are **clearly subjective** to the Defendant's claim or claims. **The 223 patent requires** authorized **use of** at least **US 9816772** by Defendant Thomas Allen Graves to practice and therefore the FRT 15 requires licensing or use according to USC 35.

**The Plaintiff and/or others associate** US patent 10514223 by Jeffery Cooper Rounds **(223 patent)** with the Plaintiff's and/or other's FRT 15 trigger. The Plaintiff and/or others have indicated that they have **purchased and or otherwise acquired interest** in this patent **from the Rounds**. The Rounds have indicated to the Defendant that the patent was sold **for $10K** to the Plaintiff and/or others, and that the Rounds were **not part of** any further **activity or income** concerning the 223 patent.

**As early as 2014** the **Defendant had extensively**, although with unintentional results **advised the Rounds** on fundamental aspects of what became the Plaintiff's **223 patent claim subjects**. Most or all fundamental proprietary aspects of Plaintiff's 223 patent were likewise communicated to the Rounds. **The Defendant had determined** that **the technology** that became subject of the 223 patent **would**

5

**not be used** in favor of a mechanism that allowed resetting a trigger earlier in the operating cycle by using a lever that is cammed between a trigger and a gun bolt independent of a hammer. **The Rounds agreed** and the **Defendant's efforts** during that time were primarily **spent accomplishing** a solution that was more **AR 15 oriented** or applicable. This would result in **US patent 9939221 by the Defendant Thomas Allen Graves** that was **especially applicable** to hammer fired firearms.

The **Defendant provided** the subject matter of US patent 9939221 entitled **Flex Fire G2 Technology** in agreement with the Rounds for their specific purpose of **protecting AR 15 applications under license.** In the course of this activity the **Rounds** in an apparent **conspiracy with the Plaintiff** and/or others **secretly developed the 223 patent** and ultimately the **FRT 15 product** with information inadvertently **gained by association** with the Defendant's **Flex Fire Technology development**.

Eventually the **Defendant learned** of the 223 patent by finding the "cited by" notice on one of his Flex Fire Technology family of patents and **called** the Rounds patent attorney **Tim Bennett**. He originally assisted with a **patent portfolio** and **drafted the final technology licensing agreement** associated with Flex Fire Technology between the Rounds and the Defendant. **Tim Bennet asserted** to the Defendant that **he did not have anything to do with the 223 patent** and that it **would have been fraudulent** for him to have been involved with said 223 patent.

The **Defendant was told** by the Rounds after his **learning of the 223 patent** that it **would be treated the same as the contracted patents** and that **filing the patent was done** to keep from having to pay the Defendant, and that **it concerned them** that the **Defendant wanted majority ownership** of patents resulting from his technologies in general. Further problems **arose** after the Rounds chose to **submit** a Flex Fire Technology based trigger/firearm **for ATF determinations**. The Rounds indicated that that firearms were determined by the ATF technical branch to be **machinegun,** During early 2021 the Rounds also said they'd **reduce** the amount of their **AR 15 product share** from **50%** reduced to **20%** to make-up for the 223 patent and their unadvised ATF submissions, and/or other general discrepancies. **The Defendant then left it at that** and **quit communicating** with the Rounds. Thereafter the technology licensing **contract** was **transferred** to the Plaintiff and/or others even though **the Rounds did not have had lawful majority control** of the **AR type firearm agreement** at the time of said transfer. Because the Plaintiff's **FRT 15**

6

**trigger was commercial** by that time and because the Rounds, and the Plaintiff were **refusing to compensate** the Defendant, he considered their involvement as a **conspiracy**. The Defendant **then proceeded** to develop an **AR type trigger** system as an emergency attempt to **recover investment from the emerging market**. The **activity involving sales** of the **Defendant's future** (ART/ALAMO 15) **AR type triggers** were **done within a year** of the verbal agreement to **drop the Rounds' interest percentage** from 50% to 20%. With the Rounds at 20% interest in the AR type firearms applications the **Defendant has majority interest in AR type firearms**.

During **October of 2021** the Defendant attended a meeting with the **Plaintiff's representative** Lawrence Demonico and His wife Karli Demonico in Austin, Texas wherein they **had tacos** and the Plaintiff's representative at least **negated the Defendant's priority claims**, and notified the Defendant that unless he works with them that he **would be sued**. The Plaintiff's representative also provided the Defendant with a written proposal to consider. The Defendant considered the proposition to seem as something between awkward and absurd. The Rounds and the Plaintiff had **already failed** to acknowledge the Defendants interest and inadvertently taken his contracted subject matter to profit from. Therefore the Defendant **did not work** with the Plaintiff, and he **instead licensed a new Star Fire Technology** system to **Big Daddy Unlimited** and/or Tony McKnight. Alamo **15 trigger was the result** of the venture with Big Daddy Unlimited and/or Tony McKnight.

The Defendants defense and **counter claims assert** that the validity of the 223 patent **authorship, and ownership are contorted, questionable and/or contestable**. The 223 patent specifications and claims **subject matter was taught** to the Rounds **by the Defendant** for the **purpose of explaining** or demonstrating the merits, and virtues of, and **logic behind the Flex Fire G2 Technology** type mechanism to **in order to provide the best solution for** commercialization of **an AR 15 style trigger/firearm system**. The 223 patent subject matter is lower performance and of more limited technological head-room than Flex Fire G2 Technology, and **the Defendant did not want the 223 patent styled variant to be** an introductory system.

The Plaintiff and or others have **obtained a default judgement** accusing the Defendant of **patent infringement** against claim 4 of the 223 patent via the Alamo

7

15 trigger system. **The Alamo 15 trigger system includes** the subject matter of **multiple provisional patent applications** that the Defendant has filed with the USPTO **and other US patents** wherein the Defendant has majority ownership. The **Plaintiff asserts** that a **pivotal locking bar** and a **roller** that contact **a reciprocating gun bolt or slide** are **equivalent** or perhaps that a roller specific claim is dependent upon the 223 claim or claims.

An **Alamo 15 trigger includes** methods and apparatus specified, and claimed in the Defendant's Star-Fire Technology family of provisional patent applications. This technology includes a **roller interacting with a ramped portion** (or portion that functions as a ramp or cam) of a gun bolt's surface to **finitely control the rapidity** of lock or **locking bar movement** and to **calibrate the precise point of trigger unlocking**. The 223 patent claims specify **contact between a gun bolt or gun bolt carrier** (equivalents) and **a lock or Locking bar** without any provision to control the final locking engagement action timing. **The lock timing** of Alamo 15 **is readily configurable** and or adjustable. **The gun bolt, slide, bolt carrier group,** or any other functional equivalent **does not contact a lock or locking bar** in the Alamo 15 or in any of the Defendant's **Star Fire Technology** based mechanisms.

**From the very beginning** the Defendant **purposely avoided a locking bar contacting a reciprocating gun bolt or slide** in any of the Star-Fire Technology type mechanisms. If a roller contacting the reciprocating gun bolt or slide is considered equivalent to a lock or more precisely to a pivotal locking bar contacting a gun bolt or gun slide of equivalent nature, then I could propose that **within the same logic** a pivotal **hammer is equivalent to a pivotal lever** contacting the trigger. **If both** methods and/or apparatus **are considered equivalent** then I would still have majority leverage in priority of invention **because I am majority owner** in all other applicable proprietary aspects of the **Flex Fire Technology sector**.

In usual technological terms **a roller and a locking bar are not equivalent** nor is my roller type trigger subjective to the 223 Patent claim or claims. The only feature of the 223 patent than can merit a meaningful claim is a combination including a pivotal locking bar that contacts reciprocating gun bolt or bolt carrier or the prescribed equivalent according to it's own claims.

**If and until** the Defendant attempts to sell a Flex Fire Technology based trigger with the prescribed combination **including a pivotal locking bar that operates by**

8

**reciprocating bolt or bolt carrier group contact** It would **not be possible to infringe the 223 patent claim or claims.**

**As it is** any application of RBT's 223 patent is concurrently subjective to at least US 9816772 and furthermore **all** unauthorized **Flex Fire Technology type triggers** and/or trigger parts, and accessories are infringing on and/or otherwise **subjective to** a patent claim or claims wherein **the Defendant is majority owner.**

**The Defendant's patents include the most fundamental claim or claims** of the Flex Fire Technology trigger industry sector. **The Plaintiff's obvious and willful patent infringement or contractual breaches** against or constrained by a claim or claims specified in **US patent 9816772 by the Defendant Thomas Allen Graves** and/or other patents **has been continuous** since the beginning of the Plaintiff's and or/other's others earliest commercialization efforts.

The following are relevant independent patent claim (dependent claims are not shown) samples provided for reference,

**Core Technology Patent claims <u>applicable to all</u> Flex Fire Technology type trigger and firearm designs**

Thomas Allen Graves (2017) US 9816772 Flex Fire Technology 2

1. A handheld finger activated semi-automatic arm comprising:
a frame;
a chamber face that is supported to the frame and that comprises a barrel;
a trigger that is depressible to fire the arm once per operating cycle;
a gun bolt that is movable with respect to the frame rearward away from the chamber concurrent with the trigger being positively mechanically reset; and,
wherein the trigger is blocked from depression until up to 99% of the operating cycle.

**Core Technology patent claims <u>applicable to many</u> Flex Fire Technology type trigger and/or firearm designs**

Thomas Allen Graves (2017) US 9568264 Flex Fire Technology 1

1. A handheld finger activated semi-automatic arm comprising:
a frame;
a chamber face that is supported to the frame and that comprises a barrel;

9

a trigger that is depressible to fire the arm once per operating cycle;
a gun bolt that is movable rearward and forward with respect to the frame;
a trigger reset mechanism comprising rigid mechanical contact between the trigger and the gun bolt during an earliest 50% of the operating cycle; and,
wherein the trigger is blocked from depression by the rigid mechanical contact between the trigger and the gun bolt up to 99% of the operating cycle.

Thomas Allen Graves (2018) US 9939221 Flex Fire G2 Technology

**1**. A trigger activated arm comprising:
a frame;
a barrel that is supported to the frame;
a trigger that: (1) has an integrated cam surface; and, (2) is depressible to fire the arm; and,
a gun bolt that: (1) has an integrated cam surface; and, (2) reciprocates with respect to the frame;
wherein as the gun bolt reciprocates, the gun bolt integrated cam surface engages the trigger integrated cam surface to reposition the trigger.

**8**. A method comprising the steps of:
(A) providing a trigger activated arm comprising:
a frame;
a barrel that is supported to the frame;
a trigger that: (1) has an integrated cam surface; and, (2) is depressible to fire the arm; and,
a gun bolt that: (1) has an integrated cam surface; and, (2) reciprocates with respect to the frame; and,
(B) providing the trigger activated arm to be operable to reposition the trigger as the gun bolt reciprocates and the gun bolt integrated cam surface engages the trigger integrated cam surface.

## RBT's patent claims that are applicable to some Flex Fire Technology type trigger, and/or firearm designs

Jeffery Cooper Rounds (2019) US 10514223 Firearm Trigger Mechanism

1. For a firearm having a receiver with a fire control mechanism pocket, transversely aligned pairs of hammer and trigger pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising:
a hammer having a sear notch and mounted in the fire control mechanism pocket to pivot on a transverse hammer pin between set and released positions;
a trigger member having a sear and mounted in the fire control mechanism pocket to pivot on a transverse trigger pin between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by cycling of the bolt carrier, the contact causing the trigger member to be forced to the set position;
a locking bar pivotally mounted in a frame and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching

10

a substantially in-battery position, allowing the trigger member to be moved by an external force to the released position.

4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising:

a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins;

a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions;

a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, the contact causing the trigger member to be forced to the set position;

a locking bar pivotally mounted in the housing and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger member can be moved by an external force to the released position.

---

## Section 3. TECHNOLOGY TIMELINE OVERVIEW

1. In the mid 1970's The Defendant invents the genesis of all Flex Fire Technology type positive displacement trigger reset systems based on a modified semi-automatic Colt Navy revolver action.

2. In the mid 1980's the Defendant experiments with Flex Fire Technology type positive displacement trigger reset system designs for RUGER 10/22 carbine applications.

3. In the Early 2000's The Defendant experiments with Flex Fire Technology type positive displacement trigger reset system designs for BERSA THUNDER handgun applications.

4. In 2014 the Defendant invents the World's first fully integrated Flex Fire Technology type positive displacement trigger reset technology type G1 Combat carbine firearm.

5. In 2014 - 2015 the Defendant agrees to preliminary terms to provide Flex Fire Technology type positive displacement trigger reset technology to the Rounds as Wolf Tactical and furthermore in 2018 the defendant enters a formal contract to provide certain Flex Fire Technology type positive displacement trigger reset technology for exclusive use in Stoner based AR type firearms to the Rounds as Wolf Tactical.

11

6. In 2020 the Rounds as Wolf Tactical provides Flex Fire Technology type positive displacement trigger reset technology to the Plaintiff and/or others.

7. In 2021 the Defendant provides Flex Fire Technology type positive displacement trigger reset technology to Big Daddy Unlimited and/or others.

---

## SECTION 4. COUNTERCLAIMS & MERITORIOUS DEFENSES (*including brief elaborations)

1. The Defendant claims a defense denying core allegations of case 22-0216.

   a. (*The Plaintiff claims infringement on a patent claim or claims by the Defendant. The Defendant's defense asserts that the infringement is not supported by the wording of their claim or claims in fact or in equivalence and furthermore that Plaintiff's patent claim authorship or validity may be questionable and/or contestable. The Defendant taught the Plaintiff's patent author critical aspects of their contesting patent claim or claims at his Buda, Texas Lab during, or as early as 2014.

   In brief the Plaintiff's claim or claims depends upon and spells out clearly that there is a pivotal locking bar contact with a gun bolt or equivalent during operation. The Defendant's technology uses a roller to contact a gun bolt or equivalent. The roller to gun bolt contact does not constitute a pivotal locking bar contact. The Defendant's defense contends that if this contact is not made with a pivotal locking bar there is not an infringement in any way that would normally be predictable within standard patent practice because all of the Plaintiff's contesting patent claims are dependent upon this "gun bolt to pivotal locking bar contact".)

2. The Defendant claims a defense asserting that the Plaintiff and/or others in conspiracy have infringed on a fundamental core patent claim, and/or claims wherein the Defendant is the majority owner.

a. (* The Defendant's patent claim and/or claims of US 9816772 by Thomas Allen Graves are used in all triggers of the "Flex Fire Technology based trigger industry segment" including any trigger using the Plaintiff's 223 patent and the Defendant's relevant claim or claims can be applied/understood without concern for further abstracted equivalencies, and that furthermore the Plaintiff and/or others have not compensated the Defendant for use of this patent claim or claims. The Plaintiff and/or others may have begun selling accused infringing trigger or triggers that are associated with their 223 patent as early as September 2020 and may have continued to do so up to the present)

3. The Defendant claims a defense asserting that the Plaintiff and/or others in conspiracy are in breach of contracts including a contract wherein the Defendant is generally to be paid 50 percent above production or manufacturing cost within the terms of said agreement but that the Plaintiff and/or others have denied or acted as if said contract does not apply to them.

a. (*The Defendant has been denied compensation and has not received any compensation for this contract's operating terms relative to any trigger produced by and/or in combination with the Plaintiff and/or others.)

4. The Defendant claims a defense asserting that there may be other persons and/or entities that must be adjoined to Plaintiff if this case if it were to proceed or otherwise to be more fully resolved.

a. (*The Plaintiff must be adjoined to others because the Plaintiff is in conspiracy to with multiple persons and/or entities that include Mike Register, Spikes Tactical, Cole Leleux, Kevin Maxwell, Lawerence

13

Demonico, Rare Breed Firearms, Red Beard Distributors, and possibly others yet to be determined.)

5. The Defendant claims a defense that he is contractually indemnified by a third and/or other parties.

   a. (*An excerpt from an agreement with BIG DADDY UNLIMITED INC or BDU and/or Tony McKnight effective from 11/12/2021 and signed by Tony McKnight and the Defendant.
      SECTION 8. LICENSEE'S OBLIGATIONS 8.1 INDEMNIFICATION. LICENSEE (which has no parent companies or subsidiaries) and Tony McKnight agree to indemnify LICENSOR and his heirs, successors, assigns and legal representatives for liability incurred to persons who are injured in consequence of the use of any INVENTION manufactured by the LICENSEE or as a consequence of any defects in the INVENTION , and to provide legal representation for all patent claims and any third party claims related to this agreement. Furthermore, LICENSEE shall indemnify LICENSOR and his heirs, successors, assigns and legal representatives against any claims, suits or liabilities brought by any third party, including but not limited to Rare Breed and the ATF, as a result of this Patent License Agreement.)

6. The Defendant claims that ABC IP, LLC, and/or others have defamed him and subverted his business by levity of lawsuits brought against the Defendant and multiple independent companies involved in the firearm trigger industry without due concern of the Defendants interest.

   a. Rare Breed Triggers et al, LLC Vs. Big Daddy Enterprises, INC - Case 1:1,21cv149-RH-HTC
   b. Rare Breed Triggers et al, LLC Vs. Big Daddy Enterprises, INC - Case 1:22cv61-RH-HTC
   c. Rare Breed Triggers et al, LLC Vs. Thomas Allen Graves et al – Case 22-cv-107 GKF-JFJ
   d. Rare Breed Triggers, LLC et al Vs. Mladen Thomas Strbac et al – Case 1:22-cv-280

14

7. The Defendant claims that the Plaintiff and/or others have conspired to provoke and/or escalate a reaction from the BATF that results in a reduction of second amendment violations by the BATF and/or to repeal or to otherwise invalidate the NFA and/or the BATF itself that have resulted in the Defendant's invention or inventions being falsely identified as BATF equivalent machine guns according to the BATF's determinations, and that this BATF infringement upon the 2nd amendment limitations of governmental powers, and the BATF involvement in general have resulted in detrimental effects on said industry segment  up to and including effectively stopping a trigger industry segment in its tracks, and that the Defendant being heavily invested by sweat equity into the very foundation of said trigger industry segment suffered both direct losses and indirect losses in the course of the Plaintiff's and or other's actions.

   a. United States of America Vs. Rare Breed Triggers, LLC - Case 1:23-cv-00369
   b. Rare Breed Triggers, LLC Vs. Garland et al – Case 3:202cv00085

---

## Section 4. REQUEST FOR REMEDIES OR JUSTICE

1. The Defendant request that case 22-0621 be set-aside including a court ordered third party arbitration program wherein if the arbitration is successful the matters would be resolved and the case would be vacated.

2. (Alternately) The Defendant request that case 22-0621 be set-aside.

3. (Alternately) The Defendant request that if the case is not effectively vacated according to the first sought remedy above, then others may be adjoined to the Plaintiff.

---

## Section 4. SWORN PERSON & DECLARATIONS

15

Pro Se Defendant Thomas Allen Graves of Eagleshead Island is an Oklahoma Native that was raised in Central Texas wherein he became a Texas Star artist. He is also an author, inventor, and experimenter having more than 4 decades of mechanical laboratory experience in the fields of thermodynamic machines, and processes that include hydrogen engine, turbomachinery, rocket engine, and armament design, and/or development.

These statements or informational representations are given as known truth or facts concerning case 22-0261. The Defendant declares that this is so.

_____

## Section 5. CONTACTS & AFFIRMATION

The Defendant notifies that any future correspondence provided to him be done through the contacts provided below.

Dated: February 7, 2023

Respectfully provided by,

**Thomas Allen Graves**

295 Unit G - Eagle Point Ln. | Sand Springs. Oklahoma | ZIP 74063

p. (512) 363-8440 | e. tag6767@gmail.com | w. thomasallengraves.com

*Thomas Allen Graves*

(Thomas Allen Graves – Pro Se Defendant)

16

Pro Se Defendant Thomas Allen Graves verifies that the following parties were provided this document on 2/7/2023 by regular mail at the address shown for each party,

**McLean Law PC** - Mark McLean (attorney to plaintiff)

408 W 11th Street, Suite 500

Austin, Tx. 78701

**RARE BREED TRIGGERS LLC** - Kevin Maxwell & Lawrence Demonico

3523 45th Street South, Suite 100

Fargo, ND 58104

**ABC IP LLC / SPIKES TACTICAL LLC** – Mike Register & Cole Leleux

2036 Apex Ct

Apopka, FL 32703

Signature (Thomas Allen Graves)

17

## PATENT LICENCE AGREEMENT

THIS AGREEMENT, effective this 12 day of October, 2021, is entered into by Thomas Alan Graves, Sand Springs, Oklahoma (hereinafter "LICENSOR") and Big Daddy Unlimited, Inc., 7600 NW 5th Piace, Gainesville, FL 32607 (hereinafter "LICENSEE"):

### BACKGROUND

WHEREAS, the parties are interested in entering into a mutually-beneficial business relationship; and

WHEREAS, LICENSOR is the owner of all right, title and interest in a United States Letter of Patent filed July 4, 2021 and issuance is pending with a United States Patent Application Number of 63218353 (hereinafter "the INVENTION"), for an A.R.T. trigger with "Star Fire Technology"; and

WHEREAS, LICENSOR desires to transfer to LICENSEE, and LICENSEE desires to acquire from LICENSOR an exclusive license to manufacture and market the INVENTION covered by the patent rights in all countries, territories and jurisdictions on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, parties agree as follow:

### SECTION 1. GRANT OF INVENTION AND PATENT RIGHTS

In consideration for the up-front monies and royalty to be paid under Sections 2 and 3, LICENSOR grants to LICENSEE:

(a) a six-month exclusive license to manufacture and distribute the INVENTION in the United States and to all foreign countries, beginning when 5,000 triggers are ready for shipping;
(b) the benefit of all Invention Patent Rights for the duration of this agreement;
(c) all technology, trade secrets and know-how related to the design and manufacture of the INVENTION, including all design plans, blueprints and any documentation or software related thereto;
(d) the exclusive ability to license the Invention to sub-distributors; and
(e) an additional six-month exclusive license to manufacture and distribute the INVENTION in the United States and to all foreign countries, provided that at least 5,000 triggers are sold during the first six months. Otherwise, the license becomes non-exclusive.

### SECTION 2. UP-FRONT MONIES

LICENSEE shall pay to LICENSOR on the date of the execution of this agreement (hereinafter "Closing") ▉▉▉▉ an additional ▉▉▉▉ on November 1, 2021, and another ▉▉▉▉ on December 1, 2021, for a total of ▉▉▉▉, to be allocated as follows:

▉▉▉▉ for signing the agreement ▉▉▉▉ as a non-refundable prepaid royalty, which shall be deducted from the first ▉▉▉▉ in royalty payments due.

1

## SECTION 3. ROYALTY

LICENSEE shall pay LICENSOR a royalty payment of ███████ a month starting January 1, 2022. Furthermore, LICENSEE shall pay LICENSOR a ████ of manufacturing cost of the triggers or ████ whichever is greater, beginning when 5,000 triggers are ready for shipping.

## SECTION 4. TIMING OF ROYALTY PAYMENTS AND MINIMUM ROYALTY

LICENSEE shall pay LICENSOR a royalty for each quarter of each year during which this Agreement is in effect. LICENSEE shall pay LICENSOR quarterly, four times per year, on or before the 30th day after January 1, April 1, July 1, and October 1 of each year during which this Agreement is in effect.

## SECTION 5. REPORTS AND RECORDS

5.1. FINANCIAL STATEMENT. LICENSEE shall provide a quarterly financial statement to LICENSOR showing the number of units manufactured during each quarter when each quarterly royalty payment is made.

5.2. RECORDS. LICENSEE shall keep records of the manufacturing costs, sales and number of units manufactured and sold pursuant to this Agreement in sufficient detail to enable the royalty payment to LICENSOR to be determined.

5.3. ANNUAL INSPECTION. LICENSEE shall allow LICENSOR's representative one annual inspection, during regular business hours or at such other times as may be mutually agreeable, to inspect LICENSEE's books and records to the extent reasonably necessary to determine LICENSEE's compliance with the terms of this Agreement.

## SECTION 6. OBLIGATIONS OF LICENSOR

LICENSOR agrees with LICENSEE to execute such documents and give such assistance as the LICENSEE may reasonably require:

(a) to defeat any challenge to the validity of, and resolve any questions concerning the Patent Rights;
(b) to apply for and obtain patents or similar protection for the INVENTION in other parts of the world at the LICENSEE's expense;
(c) to do all that is necessary to vest such protection in the LICENSEE;
(d) to inform the LICENSEE of all technical information concerning the INVENTION; (e) to supply the LICENSEE with any documents or drawings relevant to the INVENTION;
(f) to provide LICENSEE with a sample trigger and specifications under the terms of the confidentiality agreement;
(g) to give LICENSEE the first right of refusal to manufacture and distribute all firearm industry products developed for the year immediately following the Closing, with terms to be determined by the parties in writing.

2

## SECTION 7. REPRESENTATIONS AND WARRANTIES OF

LICENSOR 7.1. LICENSOR represents and warrants to LICENSEE as follows:

(a) LICENSOR is the sole and exclusive owner of the INVENTION and the Patent Rights. No other parties have any right or interest in or to the INVENTION nor to the Patent Rights;

(b) All rights to the INVENTION and the Patent Rights are free and clear of all liens, claims, security interests and other encumbrances of any kind or nature;

(c) LICENSOR has not granted any licenses to use the INVENTION to any other parties, with the possible exception of Henry M. in Texas;

(d) LICENSOR has the right and power to enter into this Agreement, and has made no prior transfer, sale or assignment of any part of the INVENTION, patent rights pertaining to the INVENTION or the Patent Rights;

(e) As of the date hereof and as of the Closing date, LICENSOR is not aware of any parties infringing on the patent rights transferred hereunder;

(f) LICENSOR is not aware that the INVENTION infringes upon any patent, but LICENSOR does not otherwise warrant or guarantee the validity of the Patent Rights or that the INVENTION does not infringe any valid and subsisting patent or other rights not held by the LICENSOR; and

(g) The INVENTION was not procured by the use of confidential information, trade secrets, or in other respects in violation of law, and there is no action, order or proceeding, to the LICENSOR's knowledge, alleging any of the foregoing.

7.2. Each of the warranties and representations set forth above shall be true on and as of the date of the Closing, as though such warranty and representation was made as of such time.

## SECTION 8. LICENSEE'S OBLIGATIONS

8.1. INDEMNIFICATION. LICENSEE (which has no parent company or subsidiaries) and Tony McKnight agree to indemnify LICENSOR and his heirs, successors, assigns and legal representatives for liability incurred to persons who are injured as a consequence of the use of any INVENTION manufactured by the LICENSEE or as a consequence of any defects in the INVENTION, and to provide legal representation for all patent claims and any third party claims related to this agreement. Furthermore, LICENSEE shall indemnify LICENSOR and his heirs, successors, assigns and legal representatives against any claims, suits or liabilities brought by any third party, including but not limited to, Rare Breed and ATF, as a result of this Patent License Agreement.

8.2. QUARTERLY ROYALTY. LICENSEE agrees to pay the above stated quarterly royalty without demand.

8.3. REASONABLE EFFORTS. LICENSEE agrees to utilize all reasonable efforts to manufacture and market the INVENTION.

8.4. FINANCIAL STATEMENT. LICENSEE agrees to provide the financial statement

3

at the end of each quarter without demand.

8.5. PROFESSIONALISM. LICENSEE agrees to the extent reasonably possible, have all manufacturing, shipping, and sales performed in a professional and equitable manner.

8.6. TRADE SECRETS. LICENSEE agrees to take all reasonable steps to maintain the confidentiality of all trade secrets provided by LICENSOR to LICENSEE during and after this Agreement.

## SECTION 9. CONDITIONS TO CLOSING

LICENSEE's obligation to pay the up-front monies and the royalty shall be subject to the satisfaction on or before the Closing of the following conditions, any of which may be waived by LICENSEE:

(a) The warranties and representations made by the LICENSOR in this Agreement shall be true and correct in all material respects on the Closing date as if such warranties and representations had been given as of the Closing date.
(b) LICENSOR shall have delivered to LICENSEE such instruments of transfer as may be reasonably requested by LICENSEE to consummate the transactions contemplated hereby.

## SECTION 10. MARKING OF INVENTION

LICENSEE agrees to affix patent pending and patent notices to all INVENTIONs prior to their sale in accordance with 35 U.S.C. §282. Each device shall have either the words "PATENT PENDING" or "Patent No." or "Reg. USPTO" followed by the patent number conspicuously marked on each of the goods sold under the Patent Rights subject to the reasonable approval of the LICENSOR.

## SECTION 11. DURATION AND TERMINATION

11.1. This Agreement shall remain in full force and effect unless and until termination or cancellation as hereinafter provided.

11.2. If LICENSEE shall at any time default in rendering any of the statements required hereunder, and payment of any monies due hereunder, or in fulfilling any of the other material obligations hereof, and such default is not cured within fifteen days after written notice is given by the LICENSOR to LICENSEE, LICENSOR shall have the right to terminate this Agreement by giving written notice of termination to LICENSEE. LICENSEE shall have the right to cure any such default up to, but not after the written notice of termination.

11.3. LICENSOR shall have the right to terminate this Agreement by giving written notice of termination to LICENSEE in the event of any of the following:
(a) liquidation of LICENSEE;
(b) insolvency or bankruptcy of LICENSEE, whether voluntary or involuntary;
or (c) appointment of a Trustee or Receiver for LICENSEE.

4

11.4. After a one (1) year period from the date of execution of this agreement, LICENSOR shall have the right to terminate this Agreement, by giving thirty (30) days written notice to LICENSEE.

11.5. LICENSEE shall have the right to terminate this Agreement, by giving three months' notice, if all patent applications, continuation, continuation-in-part or divisional applications, related to the INVENTION become abandoned without issuing into a patent.

11.6. LICENSEE shall have the right to terminate this Agreement, by giving three months' notice, if a court of law or administrative agency determines all of the issued patents to be invalid.

11.7 This Agreement will automatically renew annually unless either party provides written notice to the other of their intent not to renew at least 30 days prior to the end of the term.

## SECTION 12. MAINTENANCE FEES AND INFRINGEMENT COSTS

12.1. MAINTENANCE FEES. LICENSEE shall be responsible for paying all maintenance fees for the Patent Rights until they expire.

12.2. DEFENDING AN INFRINGEMENT LAWSUIT. LICENSEE shall be responsible for all expenses, including but not limited to legal fees, associated with defending an infringement action involving the INVENTION. LICENSEE also agrees to vigorously defend at its own expense any invalidity actions brought against the Patent Rights.

12.3. BRINGING AN INFRINGEMENT LAWSUIT. LICENSEE shall also be responsible for all expenses, including but not limited to legal fees, associated with bringing an infringement action involving the Patent Rights. LICENSEE agrees to initiate and vigorously prosecute proceedings to the termination of any infringements on the Patent Rights.

12.4. NOTIFICATION. LICENSEE and LICENSOR both agree to notify each other of any legal action involving the Patent Rights or the INVENTION.

## SECTION 13. BINDING ARBITRATION

Any controversy or claim arising out of or relating to this contract, or the breach thereof, between the LICENSOR and the LICENSEE shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in a convenient location in Tulsa, Tulsa County, Oklahoma. The judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

## SECTION 14. GOVERNING LAW

This Agreement shall be governed in accordance with the substantive laws of the State of Texas.

## SECTION 15. SEVERABILITY

15.1. The parties agree that if any part, term, or provision of this Agreement shall be found

5

illegal or in conflict with any valid controlling law, the validity of the remaining provisions shall not be affected thereby.

**15.2.** In the event the legality of any provision of this Agreement is brought into question because of a decision by a court of competent jurisdiction, LICENSOR, by written notice to LICENSEE, may revise the provision in question or delete it entirely so as to comply with the decision of said court.

# SECTION 16. NOTICES UNDER THE AGREEMENT

For the purposes of all written communications and notices between the parties, their addresses shall be:

LICENSOR:  Thomas Alan Graves
295 Eagle Point Lane
Sand Springs, Oklahoma 74063
Tag6767@gmail.com
512.363.8440

LICENSEE: Attn: Steven Kalishman, General Counsel
Big Daddy Unlimited, Inc.
7600 NW 5th Place
Gainesville, FL 32607
steven.kalishman@bigdaddyenterprisesinc.com
800.915.7709

# SECTION 17. NONASSIGNABILITY
The parties agree this Agreement imposes personal obligations on LICENSEE. LICENSEE shall not assign any rights under this Agreement without the written consent of LICENSOR, which shall not unreasonably be withheld. LICENSOR may assign all rights hereunder.

# SECTION 18. ENTIRE AGREEMENT
This Agreement sets forth all of the covenants, promises, agreements, conditions and understandings between the parties and there are no covenants, promises, agreements or conditions, either oral or written, between them other than herein set forth. No subsequent alteration, amendment, change or addition to this Agreement shall be binding upon either party unless reduced in writing and signed by them.

Signatures on the following page.

6

**IN WITNESS WHEREOF,** the parties hereto have executed this Patent License Agreement as of the dates indicated below.

Big Daddy Unlimited, Inc.
By Anthony McKnight, President

Signature: _____

Date: ___10 / 21 / 21___

Thomas Alan Graves

Signature: _Thomas A. Graves_

Date: ___10/12/2021___

7

508312363      01/03/2024

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT8359556

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | COURT JUDGMENT |

### CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| THOMAS ALLEN GRAVES | 12/15/2022 |

### RECEIVING PARTY DATA

| | |
|---|---|
| Name: | RARE BREED TRIGGERS, LLC AND ABC IP, LLC |
| Street Address: | 8 THE GREEN, SUITE A |
| City: | DOVER |
| State/Country: | DELAWARE |
| Postal Code: | 19901 |

### PROPERTY NUMBERS Total: 9

| Property Type | Number |
|---|---|
| Application Number: | 16393185 |
| Application Number: | 17316126 |
| Application Number: | 63218353 |
| Patent Number: | 11629923 |
| Patent Number: | 11002500 |
| Patent Number: | 10502511 |
| Patent Number: | 9939221 |
| Patent Number: | 9816772 |
| Patent Number: | 9568264 |

### CORRESPONDENCE DATA

**Fax Number:**

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Email: | jwalker@whe-law.com |
| Correspondent Name: | GLENN D. BELLAMY |
| Address Line 1: | WOOD, HERRON & EVANS, LLP |
| Address Line 2: | 600 VINE STREET, SUITE 2800 |
| Address Line 4: | CINCINNATI, OHIO 45202 |

| ATTORNEY DOCKET NUMBER: | RARETRG-09OK |
|---|---|
| NAME OF SUBMITTER: | GLENN D. BELLAMY |

**PATENT**

**REEL: 066163 FRAME: 0436**

| SIGNATURE: | /Glenn D. Bellamy/ |
|---|---|
| DATE SIGNED: | 01/03/2024 |

**Total Attachments: 2**
source=58 - Default Judgment#page1.tif
source=58 - Default Judgment#page2.tif

**PATENT**
**REEL: 066163 FRAME: 0437**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RARE BREED TRIGGERS, LLC, and**<br>**ABC IP, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-cv-107-GKF-JFJ** |
| | ) | |
| **THOMAS ALLEN GRAVES,** | ) | |
| **POWERED BY GRAVES, INC.,** | ) | |
| **VALOR MANUFACTURING LLC,** | ) | |
| **VALOR ARMS LLC,** | ) | |
| **JANEWAY MACHINE, INC.,** | ) | |
| **JANEWAY LEASING, LLC,** | ) | |
| **JANEWAY MANUFACTURING INC.,** | ) | |
| **JANEWAY MACHINE COMPANY, INC.,** | ) | |
| **7050 CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFAULT JUDGMENT

On this 15th day of December, 2022, having granted plaintiffs' Second Motion for Default

Judgment Against Thomas Allen Graves and Powered By Graves, Inc., the court hereby grants a

default judgment in favor of plaintiffs Rare Breed Triggers, LLC, a North Dakota limited liability

company, and ABC IP, LLC, a Delaware limited liability company, against defendants Thomas

Allen Graves and Powered By Graves, Inc., an Oklahoma corporation, in the following respects:

Defendants Thomas Allen Graves and Powered By Graves, Inc. have infringed Claim 4 of

U.S. Patent No. 10,514,223 ("the '223 Patent") by making, using, selling, offering for sale,

importing and/or promoting, providing and causing to be used without authority within the United

States, the ALAMO-15 forced reset trigger.  This infringement was willful.

Defendants Thomas Allen Graves and Powered By Graves, Inc. are hereby permanently

enjoined from infringement or contributing to the infringement of the '223 Patent.

Plaintiffs have suffered actual damages in the sum of $1,308,600, as represented in the Declaration of Cole Leleux [Doc. 52], a sum which is within the fair scope of the allegations in the Complaint.   Due to the willful nature of the infringement, plaintiffs are entitled to treble damages.   The court therefore grants default judgment in favor of plaintiffs Rare Breed Triggers, LLC and ABC IP, LLC and against defendants Thomas Allen Graves and Powered By Graves, Inc. in the sum of $3,925,800.

Plaintiffs may seek an award of reasonable attorney fees pursuant to 35 U.S.C. § 285 by filing a motion, brief and affidavit as required by Local Civil Rule 54-2, on or before January 6, 2023.

ENTERED at Tulsa, Oklahoma, this 15th day of December, 2022.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

2

**(Exhibit H)**

## Related Cases

There are not less than 9 of the plaintiffs' related and dependent lawsuits that are also dependent upon the existence of Graves' core technology patent subject matter. None of these multiple cases are initiated by Graves. These cases are referenced below,

**1.**

UNITED STATES, INC. et al v. RARE BREED TRIGGERS, LLC et al

[E.D.N.Y.] **23-cv-369**

**2.**

RARE BREED TRIGGERS, LLC et al v. Garland et al

[M.D.Fla.] **6:21-cv-01245**

**3.**

RARE BREED TRIGGERS, LLC et al v. Mladen Thomas strbac et al

[N.D.Oh.] **1:2022cv00280**

**4.**

RARE BREED TRIGGERS, LLC v. BIG DADDY ENTERPRISES, INC. et al

[N.D.Fla.] **1:21-cv-149**

**5.**

RARE BREED TRIGGERS, LLC et al v. BIG DADDY UNLIMITED, INC. et al

[N.D.Fla.] **1:22-cv-00061**

**6.**

RARE BREED TRIGGERS, LLC et al v. Madison Crawford et al

[N.D.Okla.] **4:2023-cv-00021**

**7.**

RARE BREED TRIGGERS, LLC et al v. Thomas Allen Graves et al

[N.D.Okla.] **4:2022-cv-00107**

**8.**

ABC IP, LLC et al v. Thomas Allen Graves

[E.D.Tx.] **22-cv-0261**

**9.**

NATIONAL ASSOSCIATION OF GUN RIGHTS, INC. v. Garland et al

[N.D.Tx.] **4:23-cv-00830**

_____
_____

*Exhibit I*

## The invention & derivative of Flex Fire Technology

- Graves' 9/11/2014 Flex Fire Technology or Graves FFT patent marks commercial inception of automatic reset trigger type technology or FFT methods and apparatus.

- Graves invented the world's first small arms system having integrated use of automatic reset trigger technology or Graves FFT methods and apparatus.

- The plaintiff's acquired September 27th, 2018 "223" patent claims are not organic but instead were maliciously derived "in house" from Graves' lab during Graves' development of Graves FFT methods and apparatus.

- In any case the plaintiff's acquired "223" patent claims could not and cannot be used commercially independent of core Graves FFT methods, and apparatus claim.

- The plaintiff's acquired copycat "223" patent claim is inseparable from and postdates Graves FFT patent claim by 3 years and 4 days!

Let's examine the subject.


Thomas Allen Graves is an Oklahoma native, Texas Star artist, inventor, engineer, thermodynamic scientist, and a pioneering designer of carbines, handguns, and other armaments. Working from his Buda, Texas lab beginning in 2013, and continuing Graves produced the basis of Graves G1 Combat carbine, and related technology. Graves G1 Combat carbine is the

first integrated automatic trigger reset technology or Graves FFT type armament known to exist.

Graves G1 Combat carbine is new species of armament that uses multiple patented FFT methods and apparatus, and a 2 stroke, 3 cycle gas damping recoil system or Captive Pulse Damper among other new technologies. Graves began filing FFT and other related armament patents on 9/11/2014.

Graves' US9816772 Flex Fire Technology patent has priority of invention as early as 9/11/2014.This patent describes and defines core characteristics, and features including lawfully protected methods, and apparatus governing all existing commercial triggers that automatically reset. Graves' US9816772 Flex Fire Technology patent is the defining "core technology patent" in the industry of automatic reset triggers or Graves FFT triggers.

An automatic reset trigger or Graves FFT trigger is not dependent on an action by the user and therefore the reset occurs automatically and independent of user action. Graves G1 Combat carbine is the world's first complete small arm design that includes an integrated automatic reset trigger or FFT trigger system.

Graves FFT provides a fire control system with digital control that allows a single shot per operating cycle. FFT was devised to provide a means to more effectively defend or project interest at close ranges against other highly developed combat tools or systems.

Graves FFT provides increased firearm safety including a potential of increasing both the rate of fire and the precision of fire at higher rates of fire beyond the fundamental design capabilities of pre-existing automatic or semi-automatic small arms. Graves FFT can provide maximized firepower while substantially preventing a firearm from firing automatically in a dead operators' hand or with a single accidental, or incidental trigger depression. Graves FFT is a viable and advantageous improvement above, and beyond standardized semi-automatic, and full-automatic fire control combat systems.

Graves FFT patent methods and apparatus were devised to provide a viable alternative to full-automatic military arms by using digitally precise semi-automatic arms or Graves FFTs to provide armed forces with a viable solution to friendly fire deaths or wounding, without sacrifice of performance or rates of fire.

## Basic Graves FFT claim ideology

The superior, governing, and core Graves FFT patent methods, and apparatus claim simply equates to,

"A small arm including a trigger that is automatically reset during gun bolt movement and that the trigger automatically unlocks in battery making the trigger ready to fire a subsequent shot".

## Scope & extent of Graves FFT claim ideology

The claim ideology does not exclude any other methods or apparatus used to accomplish the same. In fact the Graves FFT patent itself expressly refers to differentiations in the following,

*"Numerous embodiments have been described herein. It will be apparent to those skilled in the art that the above methods and apparatuses may incorporate changes and modifications without departing from the general scope of this invention. It is intended to include all such modifications and alterations in so far as they come within the scope of the appended claims or the equivalents thereof. Further, the "invention" as that term is used in this document is what is claimed in the claims of this document. The right to claim elements and/or sub-combinations that are disclosed herein as other inventions in other patent documents is hereby unconditionally reserved."*

Further elaborations of the fundamental Graves FFT patent claim ideology

It will also become known that another way to say this claim is,

*"A firearm having a bolt carrier that reciprocates and displaces a trigger causing the trigger member to be forced to the set position and the bolt carrier reaching a substantially in-battery position, allowing the trigger to be moved by an external force to the released position".*

In claim 1. of Graves' US9816772 Flex Fire Technology patent we find the core methods and apparatus used in all commercial Graves FFT or automatic reset trigger based armament technology.

I claim:

1. A handheld finger activated semi-automatic arm comprising:

a frame;

a chamber face that is supported to the frame and that comprises a barrel;

a trigger that is depressible to fire the arm once per operating cycle;

a gun bolt that is movable with respect to the frame rearward away from the chamber concurrent with the trigger being positively mechanically reset; and,

wherein the trigger is blocked from depression until up to 99% of the operating cycle.

## The Infringing or subjective "223" patent claim 1.

What is claimed is:

1.For *a firearm having* a receiver with a fire control mechanism pocket, transversely aligned pairs of hammer and trigger pin openings in side walls of the pocket, and *a bolt carrier that reciprocates and* pivotally *displaces* a hammer when cycled, *a trigger* mechanism, comprising:

a hammer having a sear notch and mounted in the fire control mechanism pocket to pivot on a transverse hammer pin between set and released positions;

a trigger member having a sear and mounted in the fire control mechanism pocket to pivot on a transverse trigger pin between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by cycling of the bolt carrier, the contact *causing the trigger member to be forced to the set position;*

a locking bar pivotally mounted in a frame and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, *and* movable against the spring bias to a second position when contacted by *the bolt carrier reaching a substantially in-battery position, allowing the trigger* member *to be moved by an external force to the released position.*

The plaintiff's acquired copycat "223" patent claim is inseparable from and postdates Graves FFT patent claim by 3 years and 4 days! Let's examine the logic.

<u>Literal reductive theorem within the plaintiff's acquired "223" patent claim</u>

(corresponding to highlighted sections from the above claim structure)

*A firearm having a bolt carrier that reciprocates and displaces a trigger causing the trigger member to be forced to the set position and the bolt carrier reaching a substantially in-battery position, allowing the trigger to be moved by an external force to the released position.*

## Equivalency within theorem of core Graves FFT patent claim

(claim supports the ideology)

"A small arm including a trigger that is automatically reset during gun bolt movement and that the trigger automatically unlocks in battery making the trigger ready to fire a subsequent shot".

Further or reductive equivalency within this theorem inarguably equates to core Graves FFT patent claim 1., or,

I claim:

1. A handheld finger activated semi-automatic arm comprising:

a frame;

a chamber face that is supported to the frame and that comprises a barrel;

a trigger that is depressible to fire the arm once per operating cycle;

a gun bolt that is movable with respect to the frame rearward away from the chamber concurrent with the trigger being positively mechanically reset; and,

wherein the trigger is blocked from depression until up to 99% of the operating cycle.

## The Claim Interpretation Process

To ascertain the meaning of claims, the Court has developed a set of claim construction rules. The Court looks to the intrinsic evidence of record, the claims, the specification, and the prosecution history. If the meaning of the claim can be ascertained through an analysis of the intrinsic evidence, "it is improper to rely on extrinsic evidence." (e.g. expert testimony).

First, the Court looks to the language of the claim itself. Words in claims generally are given their ordinary and customary meaning unless a different meaning is expressly set forth in the patent and file history.

<u>Synthesis</u>

–

(Resulting in)

It is impossible to use "223" patent claims without using or infringing the core Graves FFT patent claim. The "223" patent claims simply add further mechanisms to Graves FFT claim structure. The "223" patent claims cannot be made independent of the Graves FFT patent claim however the Graves FFT patent claim may be used independent of the "223" patent claims.

- Making variations of a truck does not keep the truck from being a truck.

- Making variations of a Graves FFT does not keep the Graves FFT from being a Graves FFT.

| Claim Language | Infringing FRT-15 Trigger |
|---|---|

**Claim Language**: US9816772 ; Claim1., Flex Fire Technology - Thomas Allen Graves

**Infringing FRT-15 Trigger evidence**: See Case 1:21-cv-00149-RH-HTC Document 1 Filed 09/15/21

| | |
|---|---|
| 1. A handheld finger activated semi-automatic arm comprising: a frame; | The FRT-15 trigger is for a semi-automatic AR-pattern firearm that has a lower receiver or frame. |
| a chamber face that is supported to the frame and that comprises a barrel; | The FRT-15 trigger is for a semi-automatic AR-pattern firearm having a chamber face / barrel. |
| a trigger that is depressible to fire the arm once per operating cycle; | The FRT-15 trigger is for a semi-automatic AR-pattern firearm having a trigger that is depressible to fire once per operating cycle. |
| a gun bolt that is movable with respect to the frame rearward away from the chamber concurrent with the trigger being positively mechanically reset; | The FRT-15 trigger is for a semi-automatic AR-pattern firearm having a reciprocating gun bolt or BCG that displaces a trigger to the reset position during rearward gun bolt or BCG movement. |
| and, wherein the trigger is blocked from depression until up to 99% of the operating cycle. | The FRT-15 trigger is for a semi-automatic AR-pattern firearm having a mechanism capable of blocking trigger depression until the firearm is in battery. |

**1 of 1** TAG - 1/13/2024

(Exhibit J)

Infringing Triggers

Based upon information and belief there may be up to 500K infringing triggers or trigger systems including copies, replacement parts, and upgrades currently in circulation. The triggers named below are examples of infringing commercial products that comprise or are intended to comprise a commercial application of technology governed by the core methods and apparatus claim 1. of Graves' US9816772 Flex Fire Technology patent. The following triggers and the associated technology are furthermore used to comprise the ideology of,

"A small arm including a trigger that is automatically reset during gun bolt movement and that the trigger automatically unlocks in battery making the trigger ready to fire a subsequent shot".

• Star Fire V2 trigger including copies, replacement parts & upgrades

• Alamo 15 trigger including copies, replacement parts & upgrades

• Para 15 trigger including copies, replacement parts & upgrades

• FRT 15 trigger including copies, replacement parts & upgrades

• WOT 15 trigger including copies, replacement parts & upgrades

• AC AR 15 trigger including copies, replacement parts & upgrades
• ATRIUS trigger including copies, replacement parts & upgrades

• HOFFMAN SUPER SAFETY trigger including copies, replacement parts & upgrades

• And others

Note} The core FFT / ART technology has been caused to be exported and imported by plaintiffs and defendants in 22-cv-00107. The export  / import have been continuous up to at least 4/11/2024. Face Book and other internet forums have pages, and / or groups that openly specialize in the export / import, and sales of FFT / ART technology. Some of these groups have multiple thousands in membership.



**1.**

## Urgent Matter / Time Sensitive

Immediately forward to appropriate individuals including Nina R. Morrison

**Important Time Sensitive Information Related to National Association for Gun Rights v. GARLAND in US 5th Circuit Court presided over by Judge Reed C. O'Connor Case: 4:23-cv-00830 *** Pending Summary Judgement, **Last Updated: Nov. 9, 2023**

**Assigned To: Nina R. Morrison**

**Referred To: Robert M. Levy**

**Citation: United States v. Rare Breed Triggers, LLC, 1:23-cv-00369, (E.D.N.Y)**

**Date Filed: Jan. 19, 2023**

**Date of Last Known Filing: Nov. 9, 2023**

**Cause: 28:1345 USA Plaintiff**

**Nature of Suit: 890 Other Statutory Actions**

**Jury Demand: None**

**Jurisdiction Type: U.S. Government Plaintiff**

**This information packet includes important  documents relevant to the NAGAR v. GARLAND and other related cases. I would suggest that the government consider criminal referral in this case for the herein below federal felony acts.**

[*This NAGR v GARLAND information packet is available in the PRESS section of website; thomasallengraves.com]

1

---------------------------------------------------------------------------------------------------------------

I pioneered and then developed Flex Fire Technology in my Buda, Texas lab for commerce and use by our combat, and defense forces. I am the core patent author and owner of Flex Fire Technology. Flex Fire Technology is the  subject firearm trigger or firearm fire control technology that the NAGR v GARLAND and other counterfeiters' cases shall be made to suffer under.

Flex-Fire Technology is devised to provide free people a practical means to more effectively defend or project interest at close ranges against other highly developed combat tools that may be applied against them. Flex Fire Technology provides the potential of increasing both the rate of fire and the precision of fire beyond the fundamental design capabilities of pre-existing semi or fully automatic firearms. Flex Fire Technology provides a firearm that cannot continue to fire automatically because of a dead, shocked, inexperienced, or otherwise impaired operator with a single accidental or incidental trigger pull.

- I devised Flex Fire Technology to antiquate and render obsolete both standard semi-automatic and fully automatic fire control systems in specific applications. Flex Fire Technology equipped firearms can optimize ammunition use and safety  in high stress combat, and defense applications.

- I possess all exclusive rights to use, and all rights of exclusion specific to the multiple Flex Fire Technology patents including the core patent.

- No authorized use exists for Flex Fire Technology, my core patent, that both named, and unnamed plaintiffs counterfeited, possessed, offered, and did sell. The lead counterfeiter being Rare Breed Triggers LLC, an enterprise

2

owned, and operated by Wolf Tactical LLC owners, and Spikes Tactical LLC owners, and CEO.

- Rare Breed Triggers' counterfeit trigger LLC appears to be a substantial enough enterprise at $100M to $500M in unjust enrichment to likely qualify as a RICO criminal enterprise, having counterfeited in violation of my US patent, and ITAR, by the export of my revolutionary technology, that technology being a pioneered, and developed trigger technology intended for our armed forces.

- September 5, 2023 Rare Breed Triggers LLC loses in EDNY, can no longer produce counterfeit triggers, and solicits  others to take up their mantle for payola.

- Then comes NAGR v GARLAND and a case cornerstone in patent infringement, and  counterfeiting by Rare Breed Triggers LLC. Counterfeiters have zero rights and no standing in a court. This abuse of process by NAGR fronts off stooge Plaintiffs Casey, Steele and Wheeler. Carefully NAGR keeps Rare Breed Triggers LLC from being a plaintiff.

- NAGR v GARLAND cannot be heard on the merits when the cornerstone is patent infringement, grand larceny, export of, felony conversion of US patent technology for money, vast unjust enrichment by counterfeit production, possession, possession with intent to distribute, and sales of counterfeit products.

(Thomas Allen Graves – Eagleshead Island, Oklahoma – 11/10/2023)

**2.**

**NAGR v. GARLAND**

**In Law, a Scam, Knowing Willful and Intentional Abuse of Judicial Process**

**In this case NAGR without authority or representation endangers Thomas Allen Graves, pioneer scientist and sole and several owner of Flex Fire Technology, rights and US PAT. for same.**

LEGAL NOTICE

**Counterfeiters have zero rights & zero standing in this court case**

**Infringers and or Counterfeiters**, in law, being: National Association of gun Rights Incorporated, Dudley Brown; Patrick Carey, James "J.R." Wheeler, Travis Speegle, and others including, but not limited to:

Wolf Tactical LLC, Steven Cooper Rounds, Jeff Cooper Rounds; Spikes Tactical LLC; Mike Register, Angela Register, Cole Leleux, Thomas Miller; Rare Breed Triggers LLC & Rare Breed Firearms LLC, Mike Register, Cole Leleux, Kevin C. Maxwell, Larry R. Lee jr. (a.k.a. Lawrence DeMonico); Pipe Hitters LLC, Larry R. Lee Jr. (a.k.a., Lawrence Demonico); Glenn Bellamy, Big Daddy Unlimited Incorporated, Anthony McKnight, Sherrie McKnight, Omar Zumot; MDN Industries, Madison Crawford, David Gromley, Nathan Gromley; Janeway Machine, Kenny Janeway, Tonya Janeway, Nathan Janeway; www.performancetriggers, Omar Zumot; M&M Machine Works, Henry McCullouch; Tommy Trigger, Thomas Strbac; TacCon, Mike Stakes,

4

wot15.com, Militia State Armory, Preppers Discount, armamentusa.com, M3 Tactical Tech, Imperial Arms Company, ordnancedefense.com, FGC Kits, Hoffman Tactical, Auction Armory, gunsforsale.tech, AmmoDepotNH, gunammo.com, macmillianguncenter.com, Primary Arms, ammunitionseek.com, 3rd Gen Machine, wottriggers.com, ADCO Arms, Marine Guns & Ammo, Hoosier Armory, BulDefence, AC Unity, Gat Cat Till, Team Midwest America - Casey McBroom, Denny Chapman, Jerry Miculek, Whisper Tactical – John Ferrell, The Poormans Machine Gun - Jason Lee, Rick Vasquez Firearms LLC, Rick Vasquez; gunlearn.com – Dan O'Kelly, Lee Boershig, Wesley Phillips Tomlin, Lukas M. Goza, Micheal Goldberg, Gary Lawkowsky, David A. Warrington, Jonathan M. Shaw, Whitney A. Davis, Evin Jones, triggerempire.com, Wide Open Enterprises LLC, and 150 John Does.

**This is how NAGR,** has maliciously allowed the federal government "to prevail" in the NAGR USDC NDTX Case 4:23-CV—00823-O , with TGR, Dhillon Law Group, of Virginia by "futile championing" known GRAVES US PAT infringers, all plaintiffs being GRAVES infringers, as well as, all are Counterfeiters, offering counterfeit triggers for sale, selling counterfeit triggers, in possession of counterfeit triggers.

At 1:53 – 1:56 in https://www.youtube.com/watch?v=5kAGVfS1Hg0 this video. NAGR's Head of Legal Affairs, Ms. Hannah Hill, confirms the UNHOLY ALLIANCE between RARE BREED [COUNTERFEIT] TRIGGERS, LLC and NAGR president DUDLEY W. "for personal unjust enrichment" BROWN spews, "We are helping out our [$500 million dollar] friends at "RARE BREED COUNTERFEIT TRIGGERS INC.," (RBT, Inc.) by spending "our members money" to do it. NAGR propaganda videos use RBT to beg more money for NAGR from us members to defend RBTs Thomas Allen Graves US PAT infringement and counterfeit triggers problem.

"Money Whore" National Association of Gun Rights video, exposes counterfeiter complicit head of NAGR Legal Affairs, Ms. Hannah Hill (an atty who knows or should of known better) she is actively promoting Chinese made triggers for US PAT., infringer and "counterfeiter" RARE BREED [COUTERFEIT] TRIGGERS, INC.

Notably, this "counterfeiter is conspicuously missing" from NAGR v. GARLAND as a Plaintiff for good reason. **"COUNTERFEITERS" have zero rights, "COUNTERFEITERS" have zero standing in a court**.

## NAGR, Speegle, Carey and Wheeler are caught in "felony possession of counterfeit triggers," not machine guns.

NAGR "members money" was spent on this "dead bag loser" litigation. NAGR now "begs us members for more money to waste" on protecting $500mil RBT Inc., fed-felony counterfeit triggers. See Larry DeMonico's "two" new 2023 G-WAGON SERIES Mercedes Benz 4x4s! *Photos coming. Chinese TRIGGERS foreign cars. Real American NAGR members fund RBT Inc's defense.

## NAGR, "please members keep that money coming for our friends at RBT, Inc.

NAGR "money whores" Hanna Hill, Director Legal Affairs; Gary Miller Director Development; Dudley W Brown, President @dudleywbrown; Mike Redfeld, Founder; Miranda Muncy Director, Human Resources; Steve Humphrey, Vice President; @SteveH9mmpewpew; Ryan Flugaur Vice President @ryanflugaur; Laura Zbozien Director, Marketing; Gary Miller Director, Development; Miranda Muncy Director, Human Resources. **NAGR, is fund raising using NAGR vs. Garland, USDC NDTX Case 4:23-CV—00823-O**.

1. Both parties are hiding from a fatal problem to their side of the case

2. Plaintiffs hide the fact that the triggers offered by the three individual

persons Patrick Carey, James Wheeler and Travis Speegle are collectively "illegal possession of counterfeit triggers."

3. RBT is the infringer of GRAVES US PAT trigger technology and illegally sent GRAVES US PAT technology to China.

4. RBT had China counterfeit the GRAVES trigger technology!

5. RBT had China manufacturer POS cast triggers in zinc.

6. RBT is exposed by Dhillon Law, Virginia NAGR, Texas Gun Rights, Inc., In the Complaint as the counterfeit trigger supplier of then aka RARE BREED TRIGGERS LLC, et., al.,(RBT).

7. See prison sentence in felony case SDTX Case 1:21-CR-112(10).

8. Defendants have already established that FRT 15 is a derivative work of GRAVES' Flex Fire Technology and are hiding the fact that GRAVES' pioneer "core" US PAT. technology proves RBT et., al., the infringer, non-owner counterfeiter, and the supplier of the counterfeit triggers in the marketplace.

9. By law, "counterfeiters" have ZERO rights. All who seek asylum by extension of this lawsuit are criminally "counterfeiting infringers" of GRAVES exclusive US PAT. Flex Fire Technology (slang FRT-15).

7

10. A serious question is, does the Mike Register, Cole Leleux, Steve Cooper Rounds Sr., and Jr., Kevin C. Maxwell, esq., Larry R Lee Jr., aka Lawrence DeMonico's formed "criminal enterprise" survive a likely subsequent RICO criminal prosecution after GRAVES' technology is used by gov't to prove the plaintiffs have zero rights as infringing counterfeiters of a US PAT. owned by GRAVES?

**The National Association for Gun Rights ("NAGR") and Texas Gun Rights, Inc. ("TGR"). Have "actively" covered up the fact that counterfeiters have zero rights. Counterfeit reseller possession, offering to sell or selling is infringement.**

**About the Graves Core Utility Patent**

**An infringer, federal felony counterfeiter, felony possession of counterfeit, offering or selling counterfeit unauthorized product or services based upon designs or a processes that belongs to another, in this case Graves, the patent holder.**

**GRAVES US PAT. CLAIM – [exclusive FLEX FIRE TECH (slang FRT-15)]**

**I claim:**

**8**

1. A handheld finger activated semi-automatic arm comprising:

a frame;

a chamber face that is supported to the frame and that comprises a barrel;

a trigger that is depressible to fire the arm once per operating cycle;

a gun bolt that is movable with respect to the frame rearward away from the chamber concurrent with the trigger being positively mechanically reset; and,

wherein the trigger is blocked from depression until up to 99% of the operating cycle.


35 U.S. Code § 271 - Infringement of patent


(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.


(b) Whoever actively induces infringement of a patent shall be liable as an infringer.


(c) Whoever offers to sell or sells within the United States or imports into the United a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially

9

made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer.

**General: (a) (b) (c) 35 U.S. Code § 271 - Infringement of patent**

**Re: Counterfeit product**

◦ In this case; Wolf Tactical, Spikes Tactical, Rare Breed (Counterfeit) Triggers LLC. constitute a "criminal enterprise." A five year "concerted" effort of mass patent infringement and felony conversion the US PAT. technology asset for money by "the enterprise" likely a federal criminal RICO racketeering case.

◦ Per gov't numbers the group converted GRAVES' asset for $500 million dollars by infringement; "unauthorized use of another's Pat. tech for illicit gain and unjust personal enrichment." The felony converted the technology for $500mil. Dollars illicit gain unjust enrichment.

◦ The criminal enterprise committed this after they had first executed Grand Larceny, "the theft of something very valuable." In this case very valuable federal rights and technology belonging to TAG, GRAVES.

◦ GRAVES' "core" US PAT. protects his pioneer Flex Fire "TRIGGER"

10

technology; that technology was stolen, without compensation.

○ This "criminal enterprise" ANTI-AMERICAN, RARE BREED COUNTERFEIT TRIGGERS, LLC/INC. . et., al., "gave GRAVES technology to China." China produced your counterfeit Chinese "substandard" pot metal "cast zinc" type triggers.

○ FRT-15 triggers (match book toy metal) (WOT) Wide Open Trigger selling them to Americans at 512% profit. Bending over Americans, wake up, time to clean up these grifters in our industry. They give the good guys a bad name.

**(4) For an act of infringement ...**

**(f) (1) Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.**

**(2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial non-infringing use, where such component is**

11

uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

(g) Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.

(h) As used in this section, the term "whoever" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

**CAVEAT: <u>The antidote to NAGR's latest Motion for Summary Judgement ORDER for permanent nationwide injunction, being the simple fact, that by law no license of GRAVES technology exists. ALL Flex Fire [slang FRT] TRIGGERS ARE COUNTERFEIT.</u>**

**Unlawful possession being 9/10's of law, "unauthorized possession" "offering" "selling" or the unauthorized manufacture of** counterfeit Flex Fire technology is a federal felony.

12

File Doc; (Agent for GRAVES technology – 11/4/2023 – Austin, Texas)

13

**3.**

## Official documents implicate RARE BREED TRIGGERS in grand larceny scheme

(Austin, Texas - 11/01/2023- R. ) There are multiple lawsuits wherein Rare Breed Triggers has sued competitors over alleged patent infringement issues. One of these cases, a case in the 453rd USDC at Hays County, Texas was presided over by Judge Terri J. Shibbe. Post default judgement proceedings in this case have exposed Rare Breed Triggers in a grand larceny scheme.

Post "default" judgment documents filed pro se in the 453rd USDC by the pioneering inventor of Flex Fire, a.k.a. FRT type trigger technology, and core US patent owner Thomas Allen Graves strongly refutes the fundamental validity of Rare Breed Triggers' alleged rights to produce the Flex Fire – FRT 15 type trigger, and Rare Breed Triggers' rights to sue others over their alleged patent rights claims.

Graves is a Texas Star artist, inventor, engineer, and a well-known firearm designer. Working in Buda, Texas during 2013-2015 Graves produced the G1 Combat carbine. G1 Combat carbine is the first integrated Flex Fire technology type firearm. This is a new species of firearm that uses multiple patented mechanisms and processes of an automatic power reset trigger (Flex Fire Technology), and a 2 stroke, 3 cycle gas damping recoil system (Captive Pulse Damper) among other new technologies. Graves began filing Flex Fire Technology related patents on 9/11/2014.

In 2021 Rare Breed Triggers accused Graves of infringement of a 2019 patent claim that Rare Breed Triggers' acquired from Steven Cooper Rounds and Jeffery Cooper Rounds. Steven Cooper Rounds and Jeffery Cooper Rounds combined were party to a previous agreement with Graves. The Rounds made this agreement with Graves for the Rounds to fund Flex Fire Technology patent applications and examinations for Graves' technology in exchange for the Rounds' use of exclusive license for AR

14

type firearm applications resultant from those related patents. This agreement was initiated by a term sheet agreement and ultimately a signed licensing agreement in 2018. The general terms of this agreement were to pay Graves 50% after manufacturing cost.

Published government documents, and court documents from as recent as October 2023 are convincing evidence that Graves did not infringe Rare Breed Triggers' acquired patent claim. Rare Breed Trigger's acquired patent claim is contested by Graves and there are multiple indications that Rare Breed Triggers' acquired patent claim subject was actually invented by Graves but secretly patented by Jeff Cooper Rounds while the Rounds were working with Graves. It was learned that Rounds' patent attorney that had worked with Graves and could not file what became the Jeffery Cooper Rounds patent unless it was to be filed for Graves. Independent from the contestable nature of Rare Breed Triggers' acquired patent, evidence shows that Graves did not use or infringe the Rare Breed Triggers' acquired patent claim.

Rare Breed Triggers' acquired patent infringement claim against Graves was initiated by naming Graves in a suit against Big Daddy Unlimited. Documents reveal that in fact "all" Flex Fire – FRT type triggers are dependent to, subservient to, and derivative of the Graves core US patent technology Flex Fire Technology portfolio claim or claims that were priority at USPTO as early as 2014.

Rare Breed Triggers, although with their lack of standing to bring suit on anyone whosoever, pose to have won multiple cases against Graves. As it stands all cases concerning Graves' technology or naming Graves averted any trial of merits. As it turns out Rare Breed Triggers lacked standing and could not prevail on merit.

Default judgements wherein Rare Breed Triggers sued Big Daddy Unlimited, Big Daddy Unlimited having fully indemnified Graves, and then never appearing in court to answer Rare Breed Triggers' subsequent, and multiple perjurious

15

complaints that were filed naming Graves in addition to Big Daddy Unlimited, and a Big Daddy Unlimited shell company in one case, and Graves in the other.

Prima facie evidence indicates that the specific default judgements naming Graves amount to over $4M. This resulted in one case whereby a Judge erroneously ordered Graves to produce financial information to Rare Breed Triggers based upon their default judgments against Big Daddy Unlimited wherein Rare Breed Triggers maliciously named Graves. In another instance it resulted that Rare Breed Triggers' demand for Graves to pay for compulsory action legal fees was denied by a Judge.

So, the court documents indicate that Big Daddy Unlimited explicitly indemnified Graves within a contract, and that default was taken only by Rare Breed Triggers because Big Daddy Unlimited breached the Graves contract indemnification clause, failing to take any legal action. Big Daddy Unlimited never showed up for court.

It can be deduced that Rare Breed Triggers effectively conspired with Big Daddy Unlimited ensuring "no show" default judgements in multiple USDC cases naming Graves. Even if Rare Breed Triggers allegations could have been justified these default judgments are not actually "wins" against Graves as Rare Breed Triggers misrepresents. Graves was fully indemnified by Big Daddy Unlimited beginning in October 2021. This indemnification clause specifically indemnifies Graves from Rare Breed Triggers actions.

Extensive court document analysis combined with patent document analysis further confirm that Rare Breed Triggers' commercialization of Flex Fire – FRT15 type trigger design and other trigger designs had in fact plainly infringed a core patent claim owned by Graves, and that all Flex Fire – FRT type triggers that were produced under these known conditions by anyone's permission excepting Graves, were in fact without permission, and compensation. Because Rare Breed triggers and others are counterfeiters that do not have any rights by law, in law, or at law related to this case.

16

Other information found in these documents further indicates that Rare Breed Triggers falsely represented themselves in multiple frauds upon the federal court as the owners or the licensed party of a "Graves – Rounds patent licensing agreement" that has remained until now, after approximately 5 years

unconsummated, was void, a nullity, as if it never happened. Rare Breed Triggers could not resolve this in equity, as what is void does not exist, thus cannot be resolved.

Conclusively, by evident conspiracy, and grand larceny Rare Breed Triggers, and others have continuously, and willfully infringed the Graves' patent claim, as evidenced in known source documents. All indications are that Rare Breed Triggers is the epicenter of a collective felony level conversion of Graves' assets for money. Rare Breed Triggers' President admits to $100M and owes under law $500M.

Evidence indicates that Rare Breed Triggers and others did not have the requisite standing to sue Graves or to commercialize Flex Fire - FRT 15 type triggers or trigger technology.

Evidence indicates that Rare Breed Triggers and others have continuously or willfully engaged in direct infringement of Graves' core patent claim by commercializing Flex Fire - FRT 15 type triggers or trigger technology.

Evidence indicates that Rare Breed Triggers and others' long-term conspiracy to commit grand larceny including their commercialization of Graves' assets, has resulted in subversion, and to damage Graves of more than $100M.

Sources:

United States v. Rare Breed Triggers, LLC, 1:23-cv-00369

Rare Breed Triggers, LLC v. Garland, 6:21-cv-1245

17

Rare Breed Triggers, LLC v. Big Daddy Enterprises, Inc., 1:21cv149

Rare Breed Triggers, LLC v. Big Daddy Unlimited, Inc., 1:2022cv00061

Rare Breed Triggers, LLC v. Strbac, 1:2022cv00280

ABC IP, LLC v. Thomas Allen Graves, cv22-0261

Rare Breed Triggers, LLC v. Graves, 4:22-cv-00107

Rare Breed Triggers, LLC v. Crawford, 4:2023cv00021

National Association for Gun Rights, Inc., v. Garland et al, 4:2023cv00830

18

**4.**

### The Secret Path of RBT's FRT 15 Trigger is Exposed

(Austin, Texas – 11/05/2023) United States District Court filings reveal that the path RBT took to acquire and sell the FRT-15 trigger technology was a path hidden from the ATF, RBT's own customers, and the inventor of Flex Fire Technology.

Thomas Allen Graves developed the G1 Combat carbine beginning as early as 2013 building from his previous experience with multiple engines, marine jets, and firearms. During G1 Combat carbine development Graves was granted multiple patents applicable to the G1 Combat carbine or other firearms and forming the Flex Fire Technology portfolio.

In the process of the G1 Combat carbine development Graves licensed the use Flex Fire Technology to Steven Cooper Rounds and Jeffery Cooper Rounds collectively as Wolf Tactical LLC for use in Stoner AR type firearms. Wolf Tactical used a derivative of Flex Fire Technology to produce multiple triggers including the AR 1 trigger.

The individuals that comprise Rare Breed Triggers LLC had been looking for a product that they could use to challenge the ATF, NFA, and other firearm laws. Rare Breed Triggers found Flex Fire Technology and proceeded to conspire a felony level conversion of Graves' assets beginning with the AR 1 trigger. Rare Breed Triggers President has stated that "along the way we kind of happened across this technology".

During 2017 Wolf Tactical in conspiracy with the individuals that came to comprise Rare Breed Triggers and others submitted an AR 1 trigger equipped firearm to the

19

ATF for classification. On August 28, 2018 the ATF sent a letter to Wolf Tactical stating that the AR 1 trigger equipped firearm was a machinegun.

Wolf Tactical and the others then further conspired to produce an additional derivative of a Flex Fire Technology based trigger. This derivative became the FRT 15 trigger. The FRT 15 is both derivative and subjective to Graves' "core" Flex Fire Technology patent claim but was produced without license by Rare Breed Triggers beginning about October, 2020.

Rare Breed Triggers' unauthorized use of Flex Fire Technology is the basis for the FRT 15 trigger. Rare Breed Triggers is now implicated in an industry-wide conspiracy as the epicenter of  counterfeiting and a felony conversion of Graves' assets that may exceed the previously reported $500M.

Sources:

United States v. Rare Breed Triggers, LLC, 1:23-cv-00369

Rare Breed Triggers, LLC v. Garland, 6:21-cv-1245

Rare Breed Triggers, LLC  v. Big Daddy Enterprises, Inc.,  1:21cv149

Rare Breed Triggers, LLC v. Big Daddy Unlimited, Inc., 1:2022cv00061

Rare Breed Triggers, LLC v. Strbac, 1:2022cv00280

ABC IP, LLC v. Thomas Allen Graves, cv22-0261

Rare Breed Triggers, LLC v. Graves, 4:22-cv-00107

Rare Breed Triggers, LLC v. Crawford, 4:2023cv00021

National Association for Gun Rights, Inc., v. Garland et al, 4:2023cv00830

20

**5.**

**Summary of Flex Fire Technology Ownership & Applicability**

(Eagleshead Island, Oklahoma – 11/06/2023) Flex Fire Technology is patented and requires a patent licensing agreement for 2nd party commercial use. A patent licensing agreement for Flex Fire Technology does not exist.

Thomas Allen Graves retains all rights by law to Flex Fire Technology.  All known automatic reset trigger technology for a semi-automatic firearm designed since 9-11-2015 qualifies by law as a Flex Fire Technology patent claim within US jurisdiction.

- All known automatic reset firearm trigger technology designed since 9-11-2015 use a Flex Fire Technology claim.

- Flex Fire Technology was invented by Thomas Allen Graves

- Flex Fire Technology was developed by Thomas Allen Graves

- Flex Fire Technology was patented by Thomas Allen Graves

- Flex Fire Technology is owned by Thomas Allen Graves

21

- Any automatic reset trigger technology resulting by unauthorized use of Flex Fire Technology is counterfeit

Any counterfeiters may be prosecuted to the fullest extent of the law including criminal charges

THOMAS ALLEN GRAVES (Eagleshead Island, Oklahoma  – 11/06/2023)

Thomas A Graves
Case 4:23-cv-00830-O   Document 14   Filed 11/16/23   Page 23 of 23   PageID
Sand Springs OK
74063

9589 0710 5270 1171 8912 89

U.S. POSTAGE PAID
FBM CO ENV
TULSA, OK 74114
NOV 13, 2023

RDC 99

76102

$6.66

R2305K136674-45

Retail

Tub

NOV 16 2023
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Northern District
United States District Court
501 West 10th Street, Room 310
Fort Worth, Tx 76102 - 3673



**(a) Claim elements of claim chart segment 1 are accomplished.**

**(b) Claim elements of claim chart segments 2 - 4 may or may not be**

**Accomplished.**

**(c) Claim elements of claim chart segment 5 are not accomplished.**

The patent claims describe this invention as "comprising" the enumerated

elements and therefore the scope of the patent claims are not limited to those

particular elements, and the inclusion of additional structures or features not

specified in the claims are intrinsically included in an embodiment.

An intrinsically elaborated or composite structure and functionality of claim

elements would be within the scope of a patent claim. Any extrinsic

structure, feature, or functionality is beyond the scope of a patent claim.

Alamo 15 trigger product cannot accomplish the 223 patent claim elements

of segment 5. Alamo 15 trigger product's roller or rotating wheel structure,

feature, and functionality is not intrinsic to the 223 patent claim. The Alamo

15 does not require use of 223 patent claim 4.

1. **Alamo 15 trigger does not add further contrivances to the 223 patent**

   **claim 4.**

2. **Alamo 15 trigger product legitimately bypasses and is unaffected by**

   **the 223 patent claim 4.**

3. **Alamo 15 trigger product does not infringe the plaintiff's 223 patent**
   **claim 4.**