FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

JUL 1 1 2024

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

RARE BREED TRIGGERS,

LLC, and

ABC IP, LLC,

Accusers,

v.

THOMAS ALLEN GRAVES,

Accused.

Case No. 22-CV-107-MS

**REPLY TO ACCUSER'S RESPONSE TO RULE 60 FOR SATISFIED JUDGEMENT**

NOTICE: ANTHONY MICHAEL MCKNIGHT, HAVING PAID THE JUDGMENT ON THE TRIGGER IN/BY SETTLEMENT AGREEMENT, SATISFIED JUDGEMENT,

NOTICE: OF RES JUDICATA, NDOK LOST JURISDICTION 10/19/22 OVER THE TRIGGER SUBJECT MATTER, TO THE 10/19/22 SATISFIED JUDGEMENT,

NOTICE: THAT IMPOSITION OF 14 DAY ROCKET DOCKET TIME FRAMES HAS PREJUDICE THIS PRO SE; NEITHER THE EDNY OR NDFL, IMPOSED SUCH UPON RBT-ABCIP AND THEIR BAR CARD PHALANX IN EVERY CASE; WITH NOTICE OF THE APPEARANCE OF IMPROPRIETY



Facts

**Judicial Notice of Accusers -** _failure to respond_ to Satisfied Judgment claim;

The accusers in its Motion to Strike [Doc-108] **_failed to respond_** to Satisfied

Judgment. In failing to respond **the accusers have acquiesced** to the prima facie case

1

evidence of "official record" thus inarguable fact. In NDFL "0161 [Doc-49] on

October 19, 2022, "the judgment on the trigger is paid by/in the settlement, by

Anthony Michael McKnight. McKnight is also a party in both NDOK and NDFL

under his same alter ego Powered by Graves. On October 19, 2022, the subject matter

trigger was res judicata – moot. As such, the NDOK **lost jurisdiction** over the

subject matter "trigger."  As such, the NDOK bench Mark C Steele shall order

removed with prejudice in favor of the accused. The NDOK's December 15, 2022

**non-correctable** **substantive error** because it was the **original intent** of GKF to

enter two full months after losing "all" jurisdiction - **void** final judgment in favor of

the accusers.

### Rebuttable presumptive errors made by the NDOK in its [Doc-99] denial of Rule 60 for Lack of Jurisdiction [Doc-85]

**The bench of GKF**, errant rebuttable presumptions – are herein below rebut.

1. **Presumption:** "The court has reviewed the consent judgment entered in the

   Northern District of Florida on October 19, 2022. [N.D. Fl. No. 1:22-CV-61-RH-

   HTC, Doc. 49]."

**Rebuttal:** Therefore, **the NDOK knew or should've known** the settlement

agreement paid the judgement on the trigger, on October 19, 2022, Satisfied

Judgment.

2. **Presumption:** "The plaintiffs asserted similar patent infringement claims and

   obtained a judgment against several defendants for infringement of the '223

2

patent. However, the Florida action involved none of the defendants named in this case." **"Mr. Graves was not a party to the Florida action, and he has failed to demonstrate that he is in privity with any of the parties."**

**Judicial Notice to the Court**

**The accused-**Licensor to RBT-ABCIP and McKnight, a.k.a.s' BDU, Blackstock and (underlined unauthorized Powered by Graves) is in privity with RBT-ABCIP and McKnight BDU Blackstock and (underlined unauthorized Powered by Graves) et., al., Licensees.

**Rebuttal:** This is a NDOK patently wrong rebuttable presumption, and is hereby rebut by the accuser. **The accused is the Licensor** to both parties in the NDFL and the NDOK RBT, LLC ABCIP, LLC and Anthony McKnight, BDU, and (unauthorized unlicensed for use, McKnight's-Powered by Graves)**.**

See **EXHBIT A.** Privity: RBT, LLC purchased (Graves) license NDOK [Doc-110].

RBT-ABCIP asserts in its Texas complaint [Doc-Complaint page    TX-0261 PAGE 3    ] it owns a (Graves) January 31, 2018 license to use in perpetuity and Anthony McKnight is Licensed, having individually and corporately ***indemnified*** this accused-Licensor from vindictive RBT-ABC vexatious litigation. See February 1, 2024 [Doc-66].

**Presumption:** "Further, the consent judgment was resolved in favor of Rare Breed and ABC IP and in no way prohibits plaintiffs from pursing claims against other persons or entities—such as Mr. Graves—for infringement of the '223 patent."

**1st Rebuttal:** See **EXHIBIT B** - <u>even by rudimentary review</u> – *the laws of physics* - <u>prevents any chance of 223 Claim 4 to prevail in *any* court for infringement over the Alamo-15 trigger.</u>

**2nd Rebuttal: <u>This NDOK patently wrong rebuttable presumption</u>** is hereby rebut, by the following fact: Per its patent attorney author, the "settlement agreement," in NDFL<u>, "the accusers failed to carve out of the settlement agreement that the settlement agreement paid the trigger judgment."  The Anthony Michael McKnight "settlement agreement paid the judgment on trigger." – "Satisfied Judgment"</u>

3.  **Presumption:** "Therefore, Mr. Graves has failed to satisfy the elements of claim preclusion."

**Rebuttal:** This is a patently false rebuttable presumption, hereby rebut, for the fact, Anthony McKnight, paid the judgment on the trigger in/by separate settlement agreement.

Comes now, I am.

Thomas Allen Graves, (TAG) a flesh and blood living natural masculine, clearly not a CITIZEN OF THE UNITED STATES, as defined by the 1961 Congress; "U.S. CITIZEN, a 'civilly dead entity.'"  Further, it is well settled and long established by the Supreme Court c.1796, that, "All men decide for themselves whether they want to participate in the institutions of men or not." The United States Supreme Court

confirmed this when it said: … "every man is independent of all laws, except those prescribed by nature. He is not bound by any institutions formed by his fellowman without his consent." **Cruden v. Neale 2 N.C. 338 May Term 1796**. The accused does not consent. This surely is known by the NDOK article III bench of GKF, that "the common law is the *real law*; the Supreme law of the land, code, rules regulations, policy and statutes are 'not the law', **Self v. Rhay, 61 Wn (2d) 261**, **See also SCrt "Chevron Act"** removal July 1, 2024.  Legislated statutes [rules] policy regulations ordnances are for institutions, not people.  For the NDOK or any other, "To deprive the People of their sovereignty it is first necessary to get the People to agree to submit to the authority of the entity they have created.  That is done by getting them to claim they are citizens of that entity **(see Const. for the U.S.A., XIV Amendment, for the definitions of a "citizen of the United States".)**  The accused has given no ***consent***, "The government of the United States has been emphatically termed a government of laws, and not men. It will certainly cease to deserve this high appellation if the laws furnish no remedy for the violation of a vested legal right." **Marbury v. Madison, 5th US (2 Cranch) 137, 174, 176, (1803)**.

**Judicial Notices shall be recognized, acted upon at submission to the NDOK**

"Judicial notice, or knowledge upon which a judge is bound to act without having it proved in evidence." **Black's law 4th ED.**  The *fact*, defined in Hurtado is long settled and clearly established law of the land, "Only people are sovereign and have rights;

bureaucrats, in their capacity, are not sovereign and have no rights, they have authority given by the people and are subject to the statutes." "The state cannot diminish rights of the people." **Hurtado v. People of the State of California, 110 U.S. 516.** Further inarguable is, "The assertion of federal rights, [Bill of Rights] when plainly and reasonably made, is not to be defeated under the name of local practice." **Davis v. Wechsler, 263 US 22, 24.** This tough is not evident in the **NDOK** rulings in "107." The NDOK shall comply, "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." **Miranda v. Arizona, 384.** See **EXHIBIT C** Due process denied by accusers, lack jurisdiction over the persona coupled with the NDOK loss of "trigger subject matter jurisdiction on October 19, 2022, being fatal to the accusers in "107", this loss of jurisdiction and two month later entry of void judgment in favor of the accusers is substantive error non-correctable as it was the original intent to enter judgment regardless of absence of "all" jurisdiction - hardly in Compliance with the Constitution, *emphasis added*. Further, "There can be no sanction or penalty imposed upon one because of this exercise of constitutional rights." **Sherer v. Cullen, 481 F 946.** Such void judgment is meant as a sanction or penalty, give the appearance of *impropriety*. "The 'accused's "Sovereignty itself is, of course, not subject to law, for it is the author and source of law;" **Yick Wo v. Hopkins, 118 US 356, 370 (Undersigned is Sovereign and no court has challenged that status/standing)**. Further said in Cruden, "…every man is independent of all laws,

6

except those prescribed by nature.  He is not bound by any institutions formed by his fellowman without his consent." **Cruden v. Neale.** "The common law is the real law; the Supreme Law of the land, the code, rules, regulations, policy and statues are 'not the law.'" **Self v. Rhay, 61 Wn (2d) 261**. THE NDOK states in its [Doc-99] "The court has reviewed the consent to judgment in [NDFL Doc-39]" then goes on to say, "No party in the NDFL is a party in the NDOK." This is nonsense. Anthony Michal McKnight is a party in both NDFL and the NDOK and the court knows that at a minimum from its own order [Doc-99].  The Constitutional and the appearance of impropriety in error is clearly evidenced by/in [Doc-58] NDOK GKF's ordered **void** final judgment. Legislated statutes [Code] enforced upon the people in the name of law are fraud.  They have no authority and are without mercy.  Justice without mercy is Godless and therefore repugnant to our United States Constitution. Lawmakers were given authority by the people to legislate codes, law" *to control the behavior of bureaucrats*, *elected and appointed officials*, *municipalities and agencies*, but were *never given authority to control the behavior of the people*, as we read in a US Supreme court decision, "All codes, rules, and regulations are unconstitutional and lacking due process…" **Rodrigues v. Ray Donavan (U.S. Department of Labor) 769 F. 2d 1344, 1348 (1985)** and again in Marbury, "All laws, rules and practices which are repugnant to the Constitution are null and void" **Marbury v. Madison, 5th US (2 Cranch) 137, 174, 176, (1803).** Legislators simply don't have the authority to rule-make, "Where rights secured by the Constitution are

7

involved, there can be no rule making or legislation which would abrogate them".
**Miranda v. Arizona, 384 U.S. 436, 491.** The NDOK shall take **Judicial notice of American Juris Prudence Book 16**: Constitution Law Section which the NDOK Mark C Steele, is bound by oath to obey. **Constitution rules over statute irrespective of opinions and consequences** "If the Constitution prescribes one rule and the statute is a different rule, it was a duty it is the duty of the courts to declare that the Constitution and not the statute governs in cases before them for judgment." **126Am Jur 2d Sec. 155;,** *emphasis added..* The NDOK appears oblivious, appears to lack impartiality; **Cannon 2, 2.2, 2A, and 3 apply as does Executive Order 13-818.** Notice is given the NDOK, of the accusers' counsels unethical and habitual *due process violations* in this matter. Accusers have made 46 entries in the NDOK. Yet have never once post accusers proper service of the original complaint, given the accused any notice/copied accuser/served accuser any of 46 accuser filed entries – **even when NDOK ordered accusers to so do**. Yet, the NDOK marches on as if accusers complied with its order(s) – hardly impartiality, screams Cannon 2 et., al., and 3 *impropriety*. Fairness doctrine is out the window in "107." **Accusers have willfully falsified service – for which they are rewarded instead of sanctioned**. It is time the NDOK study what is being done systemically, to the accused, by gleefully unethical accuser counsels. Let me be clear, my dwelling location correctly appears *day one* on the complaint *was* properly served on March 8, 2022 at the address on the complaint– my dwelling has not changed thereafter. However, since March 8, 2022

8

process servers are given falsified address for me, this fact is inarguably prima facie

case evidenced for the NDOK in the "official record" in "107." [Doc -    ] and

[Doc -  ].  The accusers violate NDOK orders with impunity-**_giving the appearance_**

**_of impropriety_** - as no penalties to accusers are imposed.

**The NDOK shall take judicial notice** of lack of jurisdiction

### Lack of Jurisdiction

**Persona**

The NDOK's [Doc-99] order denying the accused's [Doc-85] Rule 60 challenge of

jurisdiction over the subject matter and persona **_failed to respond_** to the accused's

challenge to jurisdiction of the *persona,* failed to produce a *contract* between the

NDOK and the accused. The accused gave no *consent*. The NDOK's by its **_failure to_**

**_respond_** to the accused's claim [Doc-85] acquiesced that [i]t lacks jurisdiction over

the *persona*. Nonetheless, the NDOK proceeded absent jurisdiction over the *persona*

on or about March 8, 2022 continuing through entry of final default void judgment on

December 15, 2022. The NDOK relied solely upon it's **_initial errant rebuttable_**

**_presumption_** [i]t had jurisdiction over both the requisite subject matter and the

*persona* - when [i]t did not. To proceed lacking jurisdiction is non-correctable

substantive error "as it was to the original intent" to proceed solely reliant upon

errant **_rebuttable presumption_** of jurisdiction over the persona. The accused has

rebutted that NDOK rebuttable presumption of jurisdiction multiple times. The last

being the accused's Rule 60, Jurisdictional Challenge of subject matter and persona [Doc-85]. However, the NDOK in its denial order [Doc-99] only asserts [i]t "has jurisdiction over patent infringement cases," but *failed to respond* to the accused's challenge of jurisdiction over the *persona*. Per [Doc-85] and [Doc-99] persona jurisdiction is – moot.  As such the default judgment and the final default judgment shall be removed, with prejudice in favor of the wrongfully accused.

**The NDOK shall take judicial notice** of lost jurisdiction

## Lost jurisdiction

### Subject matter

*"Jurisdiction may challenged at any time*," it is the NDOK's responsibility to know whether or not it has lost jurisdiction. The NDOK in [Doc-99] asserts [i]t is fully aware of the NDFL "061" matter, therefore knew or should've known [i]t had lost jurisdiction over the subject matter "trigger" on October 19, 2022. When the judgment on the trigger was paid by Anthony McKnight in/by the settlement agreement in NDFL [Doc-49] on or about October 19, 2022.  On this day the NDOK **lost subject matter jurisdiction** over the "trigger."  This loss of all jurisdiction occurred two full months before the NDOK entry of [i]ts **void** for lack of **"all" jurisdiction** final default judgment in "107."   On October 19, 2022 the subject matter trigger in NDOK was made– moot.  As such the NDOK Mark C. Steele, shall remove its "107" void judgment with prejudice in favor of the accused post haste forthe withe "….statutes that deprive a citizen of the rights of person **or property**,

without a proper trial, according to the course and usage of common law; would not

be the law of the land." **Hoke vs. Henderson 15, N.C. 15, 25 AM Dec 677.**


**The NDOK shall take judicial notice** it lacked "all" jurisdiction, October 19, 2022

**Satisfied Judgement**

**Total Lack of Jurisdiction**

The judgment on the trigger was satisfied, when <u>Anthony Michael McKnight paid the</u>

<u>judgment on the [Alamo-15] trigger within/by the settlement agreement</u>, on or about

October 19, 2022 [Doc-39] NDFL 1:22-cv-00061, *emphasis added.* Egregiously

accusers counsels in NDOK "107" have known this fatal to infringement claim fact,

for the past two years. The subject matter trigger in NDOK is by *res judicata* – moot.

The bench Mark C. Steele, shall forthe withe post haste remove with prejudice the

NDOK "107" [Doc-58] <u>void judgement</u> entered by the bench Gregory K Frizzel in

*substantive error* on December 15, 2022 in favor of the accused, *emphasis added.*

Further, v**oid judgment** in this case is *non-correctable error* as entry of final

judgement "*was the original intent of the bench*" of Gregory K Frizzel.


**Total reservation of rights** to all form of damages.

The accused hereby asserts and reserves all right to punitive damages, to include but

not limited to; intrinsic, actual, pain and suffering, health and well-being, stress

duress. This matter was brought *willfully* knowing it frivolous by all counsels in all

three cases Texas, Florida, and Oklahoma for the same trigger subject matter. The

matter is *exceptional,* the infringement claim fraudulent habitual and knowing.

11

Accusers/counsels used vexatious litigation and abusive weaponization of the courts

on the only party not infringing – the accused-Licensor. The **accuser- the accused's**

**Licensee** having purposefully sued the **accused-Licensor** simultaneously on March

8, 2022. In three states, three courts, after withholding a minimum of $22.5 million

USD in royalties due accused-Licensor, by accuser-Licensees. This default executed

to ensure the accused- Licensor could not possibly defend or prevail in three court

battles simultaneously <u>due to resources the accusers tactically withheld</u>. The accuser-

Licensee has used the royalties owed the accused-Licensor in this matter to fund the

endless lawsuits against this accused-Licensor.

**Permeant Injunction**

Demand for ordered permeant injunction against RBT et., al., its assigns agents

whomsoever however even loosely related, in favor of the accused, by NDOK

ordered complete and final unappealable lifetime bar (injunction) to any future

litigation against the wrongfully accused Licensor or his family for any reason

whatsoever-related to the gun industry, whether by fictitious entity accusers or their

individual owners, or any new fictitious entity formed by those owners.

**History / Background**

The focus of this case is the accuser's claim of patent infringement, however NDOK

has apparently failed at even a cursory review of the Alamo 15 trigger product's alleged

infringement of the Accusers' 223 claim 4. The Alamo 15 trigger uses the art described

in USPTO application 63218353 entitled Star Fire Technology, filed July 4, 2021 by

Thomas Allen Graves (the accused). The Alamo 15 trigger's most striking feature is a roller that physically contacts a bolt carrier (a reciprocating gun bolt carrier or equivalent) during de-activation of an auxiliary trigger locking mechanism. The 223 claim 4 describes a locking bar that physically contacts a bolt carrier during de-activation of the locking bar / auxiliary trigger mechanism. [**see Exhibit B**]

It is physically impossible for a locking bar or any other auxiliary trigger locking mechanism to physically contact a bolt carrier in a small arm having an Alamo 15 trigger because there is a roller between the auxiliary trigger locking mechanism and the gun bolt carrier, and therefore it is physically impossible for Alamo 15 trigger to infringe the 223 claim 4.  An Alamo 15 trigger does not include any locking bar contact with a bolt carrier. The accusers' claim of patent infringement is proven invalid. Although the court, the accusers, and the accusers' attorneys know or should have known of **Attorney Adam Floyd's relevant disclosure** in a related case **1:21-cv-00149 RH-HTC, Document 154, pages 30-34**, the court and the accusers continue actions against the accused.

**The NDOK shall take judicial notice of:**

The automatic reset trigger's (Positive displacement trigger's / FRT's & etc.) pioneering inventor and scientist Thomas Allen Graves.

**The inventor**

The primary pioneering inventor of automatic reset trigger technology ART (or so called FRT technology) is the accused in this case. The accusers' 223 patent claims

were invented prior by the accused to the 223 patent author's knowledge of any automatic reset trigger technology. The accused has developed multiple automatic reset trigger systems beginning circa 1975. In 2021, the accused made an independent advancement in automatic reset trigger technology with the introduction of Star Fire Technology and the now world-famous-roller-system. The roller system was used for the Alamo 15 trigger product. In terms of marketability the Alamo 15 trigger product effectively rendered the accusers' FRT 15 trigger product obsolete. March 8, 2022 accusers simply pit the accused-Licensor's latest "roller" *technology vs. the accused outdated "223" technology* in three states in three different courts-simultaneously.  The accused of infringement, TAG. In accordance with law has steadfastly in this matter merely responded to accuser Licensor's sham accusations "specially," answering accusers post **McKnight having already paid the judgment on the trigger, in/by the settlement agreement,** on or about October 19, 2022 on the *unauthorized* by unrelated to the accused ALAMO-15. The Alamo-15 is felony "counterfeit branded" 18 USC 2320 and "copyright infringing for personal gain" under 17 USC 106 & 107, *emphasis added.* By Anthony Michael McKnight.  As the NDOK, **knows or should've known**, McKnight is named in alter ego in the NDOK as "Powered by Graves" and named in the NDFL in his individual capacity/AMK, as owner of Blackstock Inc., owner of Powered by Graves.

**Accuser licensor's malicious and frivolous litigation**
The EDNY court exposed the fact USPAT "223" was obtained illegally, by the

accusers *in a secreted deal,* between accusers in NDOK (defendants in the EDNY [Doc-140]) and their partners in the grand larceny lab theft, Jeffrey and David Cooper Rounds and RBT et., al. Accusers in the NDOK, **confessed** in the EDNY to having **agreed to and paid secretly** the Rounds $2.5 million dollars. Usaing royalties the accuser-Licensee owe the accused-Licensor. RBT owners' Mike Register, Cole Leluex and Larry R. Lee Jr. aka DeMonico in sworn testimony told the EDNY bench, judge Morrison - **U.S.A. vs. RBT et., al**., cs number 4:23-cv-00830. The accuser- Licensee sales for 23 months were $39 million dollars after having paid the Rounds $2.5 million taken from accused scientist inventor TAG's lab. See September 15, 2022 [Doc-140] **23-cv-369 (NRM) (RML).**

**Uncompensated take**

Simply said, the Rounds executed with the owners of RBT-ABCIP, XYZ, Spider Hole, LLCs and Spikes Tactical, Inc. head Mike Register, a Grand Larceny theft of the now outdated, by STAR FIRE technology.  USPAT 223 technology in 2016, from the accused's Texas lab. Furthermore, the "107" accusers provided the court with an *unauthorized,* by Graves, 18 USC 2320 counterfeit branded trigger, and 17 USC 106 & 107 unauthorized use of copyright infringing trigger the Alamo-15. No Thomas Allen Graves authorization exists for the Alamo-15, or its branding; the Seven Three Graves family crest logo™©, PBG™©, or Powered by Grave™©. STAR FIRE, and Graves roller technology alone (the wheel) was licensed, to the individual having paid the judgment on the trigger, by the settlement agreement,

October 19, 2022.

**Privity**

The same crew the Rounds/Wolf tactical LLC of Texas, operated to transfer a (TAG)

(Graves) "license to use" to the accuser-Licensees a year later November 16, 2021.

See EDNY court [Doc-140] " USPAT 223 was **obtained by accusers by secret**

**deal**," clearly all involved knew by the secret deal the technology stolen.  "RBT-

ABCIP-XYZ-Spider Hole and Spikes *owners* testified to having paid the Rounds

$2.5 million dollars."  Accusers obtained the USPAT "223" on or about November

18, 2020, license to use from the accused on or about November 16, 2021.

**In close**

As result of the paid judgment, now having been IP lawyer reviewed top patent

contingency firms are lining up. The accusers *failed to respond* to accused's Rule 60

for Satisfied Judgment, as the facts leave the accusers with no response possible to

deny, "the judgment on the trigger is paid by the settlement" in NDFL '061.' The

accusers while making *eight irrelevant bullet points* in a Motion to Strike [ Doc- 108]

in the accusers' counsels non-response to the accused's Rule 60 claim of Satisfied

Judgment**.**

**Inarguable Fact:** The accusers counsels in [Doc-108] *failed to respond* to the

judgment on the trigger is paid by the settlement agreement", thus accusers' counsels

*acquiesced* to Satisfied Judgment. The NDOK Mark C. Steele shall in favor of the

accused, remove with prejudice the NDOK GKF's void December 15, 2022 final

judgment.

**Further**

The accused makes further demand, that it be ordered that there be no further

harassment of the accused allowed the accusers, by the NDOK; to do so in the face of

the facts, would be prejudicial, when "***the judgment on the trigger is paid by the***

***settlement agreement*** in NDFL "061" ***by Anthony Michael McKnight***, on October

19, 2022. It is that fact, the accusers failure to carve out of the settlement agreement

"***the judgment on the trigger is paid by the settlement agreement***" *clause,* from the

settlement agreement. It is the accusers having caused NDOK loss of "<u>*trigger subject*</u>

<u>*matter jurisdiction,*</u>" making the matter res judicata – moot.  However, the NDOK

bench of GKF in his order denying Rule 60 [Doc-99] states, "the court has reviewed

the consent judgment," how the secret settlement agreement used to pay the judgment

escaped the bench of GKF is a mystery to the accused. Especially when the court two

months ***after having lost subject matter jurisdiction t***o res judicata on October 19,

2022, did nonetheless on December 15, 2022 issue a **<u>non-correctable</u>** as it was the

***"original intent"*** of NDOK GKF to order, albeit it void. A final judgment in the

"107" matter in favor of the accusers.  For the NDOK to allow further continuance of

this sham matter shall be violation of Cannons 2, 2.2, 2A, and 3. and E.O. 13-818 and

would be divisive. The NDOK knows, "....that statutes [Code/Rules] which would

deprive a citizen of the rights of person or property without a regular trial, according

to the course and usage of common law, would not be the law of the land." **Hoke v.**

**Henderson, 15, N.C. 15, 25 AM Dec 677.** The NDOK entertaining further this crew

of grifters and their unethical phalanx of counsel paid with royalties the accusers owe

the accused. Has interrupted the accused's right to let alone, "…..the right to be let

alone is the most comprehensive of rights and the right most valued by civilized men.

To protect that right, every unjustifiable intrusion by the government upon the

privacy of the individual, whatever the means employed, must be deemed a violation

of the Fourth Amendment." **Olmstead v U.S. 438, 478, (1928).**  The accusers

counsels without standing have used three courts in three states as a governmental

weapon (weaponized the courts) for their persons and individual own ends. **The**

**NDOK knows this to be the case now.  "**All code rules and regulations are for

governmental authorities only, not human/or creators in accordance with God's laws.

All codes rules regulations, policy and statutes are not the law." **Rodrequs v. Rhay**

**Donovan.** "The common law is the real law, the Supreme Law of the land, the code,

rules, regulations, policy and statutes are not the law." **Self v. Rhay, 61 Wn (2d) 261.**

**Matters worse,** the fact I have owned nothing from July of 2021, makes this legal
shenanigan an exercise in futility. A waste of taxpayer expense, that the accusers
financed using the $22.5 million dollars minimum royalty the accusers owe the
accused.

Respectfully,   *Thomas Allen Graves*   July 9, 2024

295 Eagle Point Ln.
TAG. Sand Spings, OK.
74063

Thomas Allen Graves, victim pro se

(512) 363-8440

18

# Exhibit A

*Ex. A*

# PATENT LICENSE AGREEMENT

THIS PATENT LICENSE AGREEMENT (hereinafter referred to as "AGREEMENT"), is made by and between Thomas Allen Graves, an individual having his primary residence located at 1278 Cabelas Drive, Apt 826, in Buda, TX (hereinafter referred to as "LICENSOR"), and Wolf Tactical LLC located in Buda, TX and contactable at 1250 Robert S. Light Drive, Apt 7101 in Buda, TX (hereinafter referred to as "LICENSEE"):

## WITNESSETH

WHEREAS, LICENSOR has developed certain LICENSED TECHNOLOGY (as defined in Section 1 below);

WHEREAS, LICENSEE desires to obtain from LICENSOR, and LICENSOR desires to grant to LICENSEE, pursuant to the terms and conditions set forth herein, a license of LICENSED TECHNOLOGY, to develop, manufacture, make, use, offer for sale, sell, import, and export PRODUCTS, to practice any PROCESSES, which may be covered by LICENSED TECHNOLOGY and to sublicense the development, manufacture, making, use, offer for sale, sale, importing, and exporting of PRODUCTS and the practice of any PROCESSES covered by LICENSED TECHNOLOGY;

NOW THEREFORE, in consideration of their mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound agree as follows:

## SECTION 1.  DEFINITIONS

1.01.   "LICENSED TECHNOLOGY" means technology developed by LICENSOR and known to the parties as falling under three classifications: (1) Flex-Fire; (2) Grip Safety; and, (3) 3 Cycle 2 Stroke Gas Damper. "LICENSED TECHNOLOGY" includes, but is not limited to, the inventions protected under the following U.S. Patent(s) and U.S. Patent Application(s), any additional U.S. Patent Applications and foreign patent applications that claim priority therefrom that may subsequently be filed, and any additional U.S. Patent(s) and foreign patent(s) that may subsequently issue:

*Ex.A*

U.S. Patent No. 9,568,264 entitled "Flex-Fire Technology" issued on February 14, 2017;

U.S. Patent No. 9,816,772 entitled "Flex-Fire Technology" issued on November 14, 2017;

US Patent Application No. 15/811,212 entitled "Flex-Fire G2 Technology" filed on November 13, 2017; and,

US Patent Application No. 62/489,453 entitled "3 Cycle 2 Stroke Damper (Captive Pulse Damper)" filed on or about April 24, 2017.

1.02.   "TERRITORY" means worldwide.

1.03.   "FIELD OF USE" means the development, manufacture, use, offer for sale, sale, import, export, and sublicensing of AR-PATTERN FIREARMS covered by LICENSED TECHNOLOGY within the TERRITORY.

1.04.   "AR-PATTERN FIREARMS" means semiautomatic versions of the AR10 and AR15 firearms and variants thereof of any caliber, including pistol caliber carbines or pistols using a blow-back bolt.

1.05.   "PRODUCTS" means products within the scope of any and all claims covered by LICENSED TECHNOLOGY in the FIELD OF USE.

1.06.   "PROCESSES" means processes and methods related to the LICENSED TECHNOLOGY in the FIELD OF USE.

1.07.   "REVENUE" means all monetary compensation received by LICENSEE from any third-party who enters into a purchase agreement with LICENSEE to purchase PRODUCTS provided by LICENSEE or a sublicense agreement with LICENSEE for the manufacture and sale of PRODUCTS and/or for the implementation of PROCESSES. REVENUE also means monies received by LICENSEE under Section 8.02 of this AGREEMENT.

1.08.   "NET EARNINGS" means REVENUE less operating expenses and all other business costs

TAC
JCF   SCA

*Ly.A*

and charges including taxes, interest and depreciation incurred by LICENSEE doing business under this
PATENT LICENSE AGREEMENT.

## SECTION 2. GRANT OF LICENSE

2.01.   LICENSOR grants an exclusive license to LICENSEE with respect to all substantial rights
in and to the LICENSED TECHNOLOGY to develop, manufacture, make, have made, use, import, offer
for sale, sell, and export PRODUCTS, to provide services related to PRODUCTS, to practice
PROCESSES and to sublicense the development, manufacture, making, use, importing, offer for sale,
sale, and export of PRODUCTS, the providing of services related to PRODUCTS and the practice of
PROCESSES in the TERRITORY and for the FIELD OF USE, subject to the terms and conditions set
forth in this AGREEMENT.

## SECTION 3. ROYALTY

3.01.   LICENSEE shall pay to LICENSOR a royalty of 50 (fifty) % of NET EARNINGS.
LICENSEE shall provide LICENSOR with a "Statement of NET EARNINGS paid to LICENSOR" with
each royalty payment due.

3.02.   Royalties shall be paid not later than ninety (90) days upon receipt of REVENUE by
LICENSEE.

3.03.   In the event that a royalty has been paid by LICENSEE to LICENSOR in accordance with
the provisions hereof for the use of LICENSED TECHNOLOGY in any specific unit of PRODUCT, no
additional royalty shall be payable under this AGREEMENT for the use of LICENSED TECHNOLOGY
in any replacement portion of such unit of PRODUCT.

3.04.   All royalties due and payable to LICENSOR under this AGREEMENT shall be paid to
LICENSOR in United States Dollars.

## SECTION 4. ACCOUNTING

4.01.   LICENSEE shall maintain, at his usual place of business, complete and accurate records

JcR ScR THC

*Ex. A*

of activities resulting in the obligation to pay royalties under this AGREEMENT. These records shall include true books of accounting containing an accurate record of all data necessary for the determination of NET EARNINGS.

4.02.  The records referred to in Section 4.01 shall be maintained for a minimum of seven (7) years following the payment to which the records pertain. These records shall be open to inspection by LICENSOR upon reasonable advance notice, during normal business hours, to determine the accuracy of any payment or report hereunder.

4.03.  Upon request by LICENSOR, LICENSEE shall permit LICENSOR to examine such books of account by a certified public accountant.

4.04.  LICENSEE shall provide LICENSOR with an annual statement in writing showing the total amount of NET EARNINGS generated each year by LICENSEE.

4.05.  If any error in any payment hereunder is identified by the certified public accountant who is retained pursuant to the terms of this AGREEMENT, a corresponding adjustment shall be made.

## SECTION 5. MARKING

5.01.  All PRODUCTS or related packaging shall be marked "U.S. Patent Nos. _____ " or in such other form as the parties may reasonably agree upon corresponding to the relevant LICENSED TECHNOLOGY.

## SECTION 6. TERM OF AGREEMENT

6.01.  This AGREEMENT shall commence on the effective date hereof and shall continue in effect for the life of any patent covered by LICENSED TECHNOLOGY.

6.02.  The term of this AGREEMENT shall not extend beyond the date of expiration of all the patents covered by LICENSED TECHNOLOGY, except as described in Section 6.04 of this AGREEMENT.

TAG
JcR  Sce

*Ex. A*

6.03. The term of this AGREEMENT shall not extend beyond a decision or final judgment of invalidity of all patents within LICENSED TECHNOLOGY.

6.04.   Should any patent within LICENSED TECHNOLOGY expire, in whole or in part, due to non-payment of any maintenance fee, this AGREEMENT will be automatically renewed for the remainder of the life of any such expired patent upon payment of the requisite fee for reviving any such expired patent.

## SECTION 7. MAINTENANCE FEES

7.01.   Maintenance fees associated with any patent or patent application within LICENSED TECHNOLOGY shall be paid at LICENSEE'S discretion.

7.02.   Maintenance fee payments made by LICENSEE in accordance with Section 7.01 shall be made with LICENSOR responsible for contributing 100% of said payments. If such maintenance fee payments are paid by LICENSEE on behalf of LICENSOR, LICENSEE may deduct the entirety of such maintenance fee payments out of LICENSOR'S share of NET EARNINGS.

7.03.   Should LICENSEE not wish to pay any maintenance fee for any patent within LICENSED TECHNOLOGY, LICENSEE shall notify LICENSOR of LICENSEE'S desire not to pay such maintenance fee at least six (6) months prior to the due date for payment of the maintenance fee without surcharge.

7.04.   In the event that LICENSEE decides not to pay any maintenance fee for any patent within LICENSED TECHNOLOGY, LICENSOR may at his own discretion, pay said maintenance fee from his own personal funds.  The payment of any maintenance fee by LICENSOR in accordance with this provision shall continue the license granted by LICENSOR to LICENSEE under this AGREEMENT but shall not require any contribution by LICENSEE toward said payment.

## SECTION 8. ASSIGNMENTS AND SUBLICENSES

8.01.   LICENSEE shall have the right to grant sublicenses of this AGREEMENT to third parties for the development, manufacture, making, use, offer for sale, sale, importing, exporting and other

JCR   SCC   TAC

*Ex. A*

disposition of PRODUCTS, PROCESSES or related services covered by LICENSED TECHNOLOGY. LICENSEE shall report any sublicense entered into with respect to LICENSED TECHNOLOGY to LICENSOR within thirty (30) days.

8.02.   LICENSEE shall have the right to assign this AGREEMENT to a third-party. If such assignment is made, all monetary compensation received by LICENSEE in exchange for the assignment shall be considered to be REVENUE as set forth in Section 1.07 of this AGREEMENT. Any third-party assignee of this AGREEMENT shall assume all responsibilities of LICENSEE in accordance with the terms of this AGREEMENT.

8.03.   This AGREEMENT shall be binding upon and inure to the benefit of the parties and their respective heirs, successors, legal representatives, and assigns.  LICENSOR shall provide LICENSEE with written notice of any heirs, successors, legal representatives, and assigns who may have a contingent, conditional, or vested interest in this AGREEMENT.  Such written notice shall include instructions for where and whom LICENSEE is to send royalty payments to under this AGREEMENT upon the vesting of any rights of LICENSOR'S heirs, successors, legal representatives and assigns rights in this AGREEMENT.  Likewise, LICENSEE shall provide LICENSOR with written notice of any heirs, successors, legal representatives, and assigns who may have a contingent, conditional or vested interest in this AGREEMENT.

8.04.   This AGREEMENT and the license herein granted shall be assignable and transferable by LICENSOR, upon written notice to LICENSEE.

## SECTION 9. REPRESENTATIONS AND WARRANTIES

9.01.   LICENSOR represents and warrants that it is the owner of all of LICENSED TECHNOLOGY and has the right to enter into this AGREEMENT, to grant the rights granted herein, and to perform its obligations hereunder, and that to do so will not violate or conflict with any agreement to which LICENSOR is a party or by which LICENSOR is bound.

TAG
JCR   SCR

*Ex. A*

9.02.   LICENSEE represents and warrants that it has the right, power and authority to enter into this AGREEMENT and to perform its obligations hereunder, and to do so will not violate or conflict with any agreement to which LICENSEE is a party or by which LICENSEE is bound.

9.03.   Nothing in this Agreement shall be construed as:

(a) an admission by LICENSEE of, or a warranty or representation by LICENSOR as to, the validity or scope of any patents that may be covered by LICENSED TECHNOLOGY;

(b) imposing on LICENSOR or LICENSEE, any obligation to institute any suit or action for infringement of any patents covered by LICENSED TECHNOLOGY, or to defend any suit or action brought by a third-party that challenges or concerns the validity of any patents covered by LICENSED TECHNOLOGY; and

(c) a warranty or representation by LICENSOR or LICENSEE that any manufacture, use, sale, offer for sale, import, export or other disposition of PRODUCTS will be free from infringement of any patent or other proprietary right.

## SECTION 10. TERM SHEET AGREEMENT

10.01.   This AGREEMENT further delineates terms agreed to between LICENSOR and S. Cooper Rounds, an individual who is also an officer of LICENSEE, in an agreement which was signed and notarized on July 6, 2017 (hereinafter referred to as "TERM SHEET AGREEMENT"). Should there appear to be a conflict between any of the terms in this AGREEMENT and any of the terms as stated in the TERM SHEET AGREEMENT, the TERM SHEET AGREEMENT shall take precedence.

10.02.   As stated in the TERM SHEET AGREEMENT, LICENSOR has agreed that a separate company, temporarily referred to as the "FIREARM TECHNOLOGY LLC", will be formed into which the LICENSOR will assign 100% of the ownership of the LICENSED TECHNOLOGY. At the time of such assignment, FIREARM TECHNOLOGY LLC will replace Thomas Allen Graves as the named LICENSOR and FIREARM TECHNOLOGY LLC will become subject to all the terms of this AGREEMENT as stated herein.

TAG
JCR   SCR

*Ex. A*

## SECTION 11. MISCELLANEOUS

11.01. This AGREEMENT and the TERM SHEET AGREEMENT constitute the entire agreement and understanding of the parties regarding the subject matter hereof, and any and all prior agreements, discussions, proposals, promises, representations, or undertakings regarding the subject matter hereof, whether oral or written, are hereby revoked and superseded by the terms in both agreements. The terms as stated in this AGREEMENT and the TERM SHEET AGREEMENT on which it is based, are intended as the final expression of the agreement between the parties regarding the subject hereof. The two agreements shall take precedence over any other documents that may be in conflict therewith.

11.02. In making and performing this AGREEMENT, LICENSOR and LICENSEE act and shall act at all times as independent contractors and nothing contained in this AGREEMENT shall be construed or implied to create an agency or partnership relationship between the parties. At no time shall either party make commitments or incur any charges or expenses for or in the name of the other except as specifically stated in this AGREEMENT.

11.03. The terms of this AGREEMENT have been negotiated at arms-length between LICENSOR and LICENSEE having input into the specific terms. As a result, the rule of "interpretation against the draftsman" shall not apply in any dispute over the interpretation of the terms of this AGREEMENT.

11.04. This AGREEMENT shall be governed by, construed by, and interpreted in accordance with the laws of the State of Texas, without regard to its Conflict of Laws provisions.

11.05. LICENSOR and LICENSEE shall not authorize, aid, abet or assist, either directly or indirectly, any third-party or non-signatory to this AGREEMENT in taking any action or cause or assist any third parties to take action inconsistent with the terms of this AGREEMENT or to take action that, if performed by LICENSOR or LICENSEE, would constitute a breach of this AGREEMENT.

TAG

JCR   SCR

*Ex. A*

11.06. The headings of the sections of this AGREEMENT are included for convenience of reference only and shall not control or affect the meaning or construction of any of the terms or provisions of this AGREEMENT in any manner.

11.07. Any controversy or claim arising out of or relating to this AGREEMENT shall be first subject to non-binding arbitration administered by the American Arbitration Association. The place of arbitration shall be Austin, Texas and the arbitration laws of the State of Texas, then in force, shall apply. The costs and expenses for such arbitration shall be shared equally between the parties.

11.08. Any dispute arising under this AGREEMENT that cannot be resolved by good faith business negotiations shall be resolved in the courts of the State of Texas sitting in the County of Hays, either the state or federal courts therein ("COURTS"), and parties hereto consent to the jurisdiction and of such COURTS, agree to accept service of process by regular mail, and waive any and all claims that such COURTS do not have personal jurisdiction over them, that such COURTS do not have subject matter jurisdiction to hear any dispute arising out of this Agreement, that venue is not proper in such COURTS, or that Courts are an inconvenient or improper forum.

11.09. The Effective Date of this AGREEMENT is the last dated signature by the parties below.

## SECTION 12. NOTICES

12.01. It shall be a sufficient giving of any notice, request, report, statement, disclosure or other communication hereunder, if the party giving the same shall deposit a copy thereof in the Post Office in a registered or certified envelope, postage prepaid, addressed to the other party at its address hereinabove set forth or at such other address as the other party shall have theretofore in writing designated. Correspondence to be made hereunder shall be transmitted to the address hereinabove provided for the giving of notices and may be so transmitted in an envelope as above provided. The date of giving any such notice, request, report, statement, disclosure or other communication, and the date of making any such payment provided such payment is received, shall be the date on which such envelope was deposited. The Post Office receipt showing the date of such deposit shall be prima facie evidence of these facts.

*Ex. A*

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the last dated signature set forth below.

(LICENSOR)

Print Name: Thomas A. Graves

Date: 1-31-2018

STATE OF TEXAS          )
                        )
COUNTY OF Hays          )

This instrument was acknowledged before me on this 31 day of January, 2018, by Thomas Allen Graves.

Notary Public Mayela Gonzalez

My commission expires: 03 | 18 | 2020

(SEAL)



JLF  SCR

*Ex. A*

WOLF TACTICAL LLC

(LICENSEE) BY: Jeffrey Cooper Rounds

Print Name: JEFFREY COOPER ROUNDS

Title: PRESIDENT

Date: 31 JANUARY 2018

STATE OF TEXAS )

)

COUNTY OF Hays )

This instrument was acknowledged before me on this 31 day of January, 2018, by Jeffrey Cooper Rounds, also known as J. Cooper Rounds.

Notary Public *Mayela Gonzly*

My commission expires: 03|18|2020

(SEAL)



JCR SCR TAG

*Ex. A*

Wolf Tactical LLC
_____
(LICENSEE) By: *Steven Cooper Rounds*

Print Name: Steven Cooper Rounds

Title: Treasurer

Date: 1/31/2018


STATE OF TEXAS )
 )
COUNTY OF Hays )

    This instrument was acknowledged before me on this 31 day of January , 2018, by Steven Cooper Rounds, also known as S. Cooper Rounds.

Notary Public *Mayela Gonzalez*

My commission expires: 03|18|2020

(SEAL)



JCR  SCR

*Ex. A*

# PATENT LICENCE AGREEMENT

THIS AGREEMENT, effective this 12 day of October, 2021, is entered into by Thomas Alan Graves, Sand Springs, Oklahoma (hereinafter "LICENSOR") and Big Daddy Unlimited, Inc., 7600 NW 5th Piace, Gainesville, FL 32607 (hereinafter "LICENSEE"):

## BACKGROUND

WHEREAS, the parties are interested in entering into a mutually-beneficial business relationship; and

WHEREAS, LICENSOR is the owner of all right, title and interest in a United States Letter of Patent filed July 4, 2021 and issuance is pending with a United States Patent Application Number of 63218353 (hereinafter "the INVENTION"), for an A.R.T. trigger with "Star Fire Technology"; and

WHEREAS, LICENSOR desires to transfer to LICENSEE, and LICENSEE desires to acquire from LICENSOR an exclusive license to manufacture and market the INVENTION covered by the patent rights in all countries, territories and jurisdictions on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, parties agree as follow:

## SECTION 1. GRANT OF INVENTION AND PATENT RIGHTS

In consideration for the up-front monies and royalty to be paid under Sections 2 and 3, LICENSOR grants to LICENSEE:

(a) a six-month exclusive license to manufacture and distribute the INVENTION in the United States and to all foreign countries, beginning when 5,000 triggers are ready for shipping;
(b) the benefit of all Invention Patent Rights for the duration of this agreement;
(c) all technology, trade secrets and know-how related to the design and manufacture of the INVENTION, including all design plans, blueprints and any documentation or software related thereto;
(d) the exclusive ability to license the Invention to sub-distributors; and
(e) an additional six-month exclusive license to manufacture and distribute the INVENTION in the United States and to all foreign countries, provided that at least 5,000 triggers are sold during the first six months. Otherwise, the license becomes non-exclusive.

## SECTION 2. UP-FRONT MONIES

LICENSEE shall pay to LICENSOR on the date of the execution of this agreement (hereinafter "Closing") ▓▓▓▓ an additional ▓▓▓▓ on November 1, 2021, and another ▓▓▓▓ on December 1, 2021, for a total of ▓▓▓▓, to be allocated as follows:

▓▓▓▓ for signing the agreement ▓▓▓▓ as a non-refundable prepaid royalty, which shall be deducted from the firs ▓▓▓▓ n royalty payments due.

1

*Ex. A*

## SECTION 7. REPRESENTATIONS AND WARRANTIES OF

**LICENSOR 7.1.** LICENSOR represents and warrants to LICENSEE as

follows:

(a) LICENSOR is the sole and exclusive owner of the INVENTION and the Patent Rights. No other parties have any right or interest in or to the INVENTION nor to the Patent Rights;

(b) All rights to the INVENTION and the Patent Rights are free and clear of all liens, claims, security interests and other encumbrances of any kind or nature;

(c) LICENSOR has not granted any licenses to use the INVENTION to any other parties, with the possible exception of Henry M. in Texas;

(d) LICENSOR has the right and power to enter into this Agreement, and has made no prior transfer, sale or assignment of any part of the INVENTION, patent rights pertaining to the INVENTION or the Patent Rights;

(e) As of the date hereof and as of the Closing date, LICENSOR is not aware of any parties infringing on the patent rights transferred hereunder;

(f) LICENSOR is not aware that the INVENTION infringes upon any patent, but LICENSOR does not otherwise warrant or guarantee the validity of the Patent Rights or that the INVENTION does not infringe any valid and subsisting patent or other rights not held by the LICENSOR; and

(g) The INVENTION was not procured by the use of confidential information, trade secrets, or in other respects in violation of law, and there is no action, order or proceeding, to the LICENSOR's knowledge, alleging any of the foregoing.

7.2. Each of the warranties and representations set forth above shall be true on and as of the date of the Closing, as though such warranty and representation was made as of such time.

## SECTION 8. LICENSEE'S OBLIGATIONS

8.1. INDEMNIFICATION. LICENSEE (which has no parent company or subsidiaries) and Tony McKnight agree to indemnify LICENSOR and his heirs, successors, assigns and legal representatives for liability incurred to persons who are injured as a consequence of the use of any INVENTION manufactured by the LICENSEE or as a consequence of any defects in the INVENTION, and to provide legal representation for all patent claims and any third party claims related to this agreement. Furthermore, LICENSEE shall indemnify LICENSOR and his heirs, successors, assigns and legal representatives against any claims, suits or liabilities brought by any third party, including but not limited to, Rare Breed and ATF, as a result of this Patent License Agreement.

8.2. QUARTERLY ROYALTY. LICENSEE agrees to pay the above stated quarterly royalty without demand.

8.3. REASONABLE EFFORTS. LICENSEE agrees to utilize all reasonable efforts to manufacture and market the INVENTION.

8.4. FINANCIAL STATEMENT. LICENSEE agrees to provide the financial statement

3

*Ex. A*

**IN WITNESS WHEREOF,** the parties hereto have executed this Patent License Agreement as of the dates indicated below.

Big Daddy Unlimited, Inc.
By Anthony McKnight, President

Signature: _____

Date: ___ 10 / 21 / 21 _____

Thomas Alan Graves

Signature: _Thomas A. Graves_

Date: ___ 10/12/2021 _____

7

*Ex. H*

FILED
2/10/2022 5:12 PM
Beverly Crumley
District Clerk
Hays County, Texas

CAUSE No. _____22-0261_____

| | | |
|---|---|---|
| ABC IP, LLC, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HAYS COUNTY, TEXAS |
| | § | |
| THOMAS ALLEN GRAVES, | § | |
| | § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

The Plaintiff, ABC IP, LLC ("ABC" or "Plaintiff"), hereby sues the Defendant,

THOMAS ALLEN GRAVES ("GRAVES" or "Defendant"), and as grounds therefore states

as follows:

### Parties, Jurisdiction and Venue

1.    As required by Tex. R. Civ. P. 47, this is an action seeking monetary relief of

$250,000 or less and non-monetary relief.

2.    ABC is a Delaware Limited liability Company whose address is 8 The Green,

Ste. A, Dover, Delaware 19901, and who is otherwise *sui juris*.

3.    GRAVES is an individual whose address is 1278 Cabelas Drive, Apt. 826,

Buda, Texas 78610, and who is above the age of 18 years old and is otherwise *sui juris*.

4.    Venue is proper in Hays County, Texas, because the contract at issue

between the Parties elects Hays County, Texas as an exclusive venue for litigation arising

out of the contract, and because the Defendant resides in Hays County, Texas.

*Ex. A*

5.    All conditions precedent to the institution of this lawsuit have been performed or were otherwise waived or excused.

### General Factual Allegations

6.    GRAVES is the original owner of certain patents and/or technologies related to firearms, falling under three classifications, and generally described as follows: (l) Flex-Fire; (2) Grip Safety; and, (3) 3 Cycle 2 Stroke Gas Damper; including, but not limited to, the inventions protected under the following U.S. Patent(s) and U.S. Patent Application(s), as well as any additional U.S. Patent Applications and foreign patent applications that claim priority therefrom that may subsequently be filed, and any additional U.S. Patent(s) and foreign patent(s) that may subsequently issue for the following patent numbers:

> (1) U.S. Patent No. 9,568,264 entitled "Flex-Fire Technology" and issued on February 14, 2017;
>
> (2) U.S. Patent No. 9,816,772 entitled "Flex-Fire Technology'' issued on November 14, 2017;
>
> (3) US Patent No. 9,939,221 entitled "Flex-Fire G2 Technology" issued April 10, 2018; and
>
> (4) US Patent No. 10,502,511 entitled "3 Cycle 2 Stroke Damper (Captive Pulse Damper)" issued December 10. 2019.

(hereinafter "Licensed Technology"). [**Exhibit "A"** – Contract Assignment Agreement at Appx. A, Sec. 1.01].

7.    On or about January 31, 2018, GRAVES granted an exclusive license to the Licensed Technology to "Wolf Tactical, LLC", a limited liability company doing business in Buda, Texas (hereinafter "Licensing Agreement"). [See id. at Appx. A].

Ex. A

8.      The Licensing Agreement gives the Licensee the exclusive rights on a world-wide basis to take the following actions with regard to the Licensed Technology: "develop, manufacture, make, have made, use, import, offer for sale, sell, and export PRODUCTS, to provide services related to PRODUCTS, to practice PROCESSES and to sublicense the development, manufacture, making, use, importing, offer for sale, sale, and export of PRODUCTS, the providing of services related to PRODUCTS and the practice of PROCESSES in the TERRITORY and for the FIELD OF USE". [See id. at Appx. A, Secs. 1.02 & 2.01].

9.      The Licensing Agreement exists for the entire life of the Licensed Technology and it is freely assignable by the Licensee to third parties. [See id. at Appx. A, Sec. 6.01 & 8.02].

10.      On or about October 21, 2021, Wolf Tactical, LLC, assigned all of its rights, title and interest in the Licensing Agreement and the Licensed Technology to ABC under the Contract Assignment Agreement, such that ABC now stands in the shoes of Wolf Tactical, LLC, and is the exclusive owner of all rights, title and interest as the "Licensee" under the Licensing Agreement and all its corresponding rights to the Licensed Technology (hereinafter "Assignment"). [See id.].

11.      ABC has learned that GRAVES is and has been actively selling or seeking to sell at least one of the patented items included in the Licensed Technology (the Captive Pulse Damper). See **Exhibit "B"**, copy of page from Graves web site showing the Captive Pulse Damper for sale.

# Exhibit B

*Ex. B*



Requisite to prevail in Claim 4 - "contact"

Bolt Carrier

Locking Bar

*Ex. B*

Law of Physics Prevents Bolt Carrier &  Locking Bar Contact .

The Roller/Wheel between the locking bar and the bolt carrier defeats 223 Claim 4 infringement.

Roller



# Exhibit C

Ex. C

CLERK, UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA
333 WEST FOURTH STREET, ROOM 411
TULSA, OKLAHOMA 74103-3819

OFFICIAL BUSINESS

received
7/5/2024

Thomas Allen Graves
295 Eagle Point Ln.
Sand Springs, OK 74063

SAND SPRINGS
I N T
B

TULSA OK 740

26 JUN 2024 PM 3 L

NEOPOST
06/26/2024
US POSTAGE $000.64⁰

FIRST-CLASS MAIL

ZIP 74103
041M11287529

Thomas Allen Graves
295 Eagle Point Ln
Sand Springs, OK 74063

MS

Clerk, United States District Court
Northern District of Oklahoma
333 West Fourth Street, Room 411
Tulsa, Oklahoma 74103

Postmarked 7/9/2024
22CV107-GKF-JFJ

RECEIVED
JUL 11 2024
Heidi D. Campbell, Clerk
U.S. DISTRICT COURT





Retail

RDC 99

74103

S2024D503089-06

**$3.07**

U.S. POSTAGE PAID
FCM LG ENV
SAND SPRINGS, OK 74063
JUL 09, 2024